LEBERT JACKMAN *v.* MARK MONTGOMERY, CLAYBORN PARKER.

[No. 1-1173A196. Filed December 26, 1974. Rehearing denied January 28, 1975. Transfer denied September 30, 1975.]

*Kendall, Stevenson, Howard & Lowry,* of Danville, *Hickam & Hickam,* of Spencer, for appellant.

*Yarling, Winter, Tunnell, Robinson & Lamb,* of Indianapolis, *Charles W. Edwards,* of Spencer, for appellee.

ROBERTSON, P.J.—Plaintiff-appellant (Jackman) is appealing from a negative judgment on his suit for damages resulting from a collision between his farm tractor and an automobile driven by the defendant-appellee (Montgomery).

One of the two issues raised by Jackman presents reversible error in that the trial court refused to give his tendered instruction on the duty of a motorist to maintain a lookout.

A review of the facts shows that between 7:00 and 7:30 P.M. on an early November evening Montgomery was driving an automobile south on a county road. Jackman, who was taking a group of youngsters on a church hayride, was sitting on his farm tractor which was parked on the west side of the road and also headed south. Some boys were in the process of hitching two wagons to the tractor when Montgomery's automobile struck the left rear tire of the tractor. Jackman was thrown to the ground and injured.

At the conclusion of the trial Jackman tendered an instruction which read:

"You are instructed that a person who operates an automobile along a county road on a dark night must keep a lookout for other travelers on the highway, and along the highway, as part of his duty to exercise ordinary care."

Montgomery objected to the instruction with the trial court then modifying the instruction to read:

"You are instructed that a person who operates an automobile along a county road on a dark night must keep a *reasonable* lookout for other travelers on the highway, and *upon* the highway, as part of his duty to exercise ordinary care." (Additions emphasized).

Jackman then objected to the modified instruction as being "two confining". The trial court then refused the entire instruction.

Jackman's motion to correct errors asserts that the rejection of the instruction as modified is reversible error. As previously indicated, we agree for the reason that the trial court should not refuse an instruction covering an essential element of the case, when it is supported by some evidence and is consistent with the theory of the case and where only a general instruction is intended to cover that area of the law. *See Barnes* v. *Deville* (1973), 155 Ind. App. 387, 293 N.E.2d 54; *Bundy* v. *Ambulance Indianapolis Dispatch, Inc.* (1973), 158 Ind. App. 99, 301 N.E.2d 791.

Montgomery argues that the refusal was not error for the reasons that the instruction was repetitious and an improper statement of the law.

We cannot agree that the refused instruction was repetitious. The trial court gave Indiana Pattern Jury Instructions which generally defined negligence, proximate cause, etc. Additionally, the complaint was read to the jury wherein the failure to maintain a lookout was one of the allegations of negligence. In neither instance do we find a definition of lookout. Instead, we find the instructions, alleged by Montgomery to have covered lookout, to be general in nature.

As to whether the offered instruction was a proper statement of the law we are of the opinion that something more is required of a motorist's lookout than the narrow position urged by Montgomery in that a reasonable lookout, depending upon the facts, may include

something more than the traveled portion of the highway. *Accord: Johnson* v. *Mills* (1973), 157 Ind. App. 620, 301 N.E.2d 205. *See Generally:* 3 I.L.E. Automobiles § 154 at p. 512: 2 Blashfield Automobile Law and Practice § 104 *et seq.*

We conclude, therefore, that it was reversible error to not include Jackman's instruction on lookout and accordingly reverse and remand for further action not inconsistent with this opinion.

Although not necessary for the decision in this case we shall discuss Jackman's second issue to aid the trial court should the question arise again.

Jackman contends that the trial court erred in admitting into evidence a voicewriter recording of a telephone conversation between a plaintiff's witness and an insurance adjustor.

At the trial, Danny Bailey was called as a witness for Jackman. His testimony was damaging to Montgomery. During his testimony, Bailey stated that he remembered being called around the date of the accident, but did not remember who called him or what had been discussed.

In the presentation of Montgomery's case, Stovall, an insurance adjustor was called as a witness. He testified that he had called Bailey and recorded the conversation. The recording was then offered to impeach Bailey's testimony.

A hearing was held outside of the presence of the jury in which the trial judge listened to the recording and ruled that it was admissible. The recording was then played to the jury.

Jackman contends that the trial court erred because a proper foundation had not been laid for the admission of the recording.

Indiana law requires that:

> "The admission of a sound recording should be preceded by a foundation disclosing the following:
> (1) That it is authentic and correct;

(2) That the testimony elicited was freely and voluntarily made, without any kind of duress;

(3) That all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;

(4) That it does not contain matter otherwise not admissible into evidence; and

(5) That it is of such clarity as to be intelligible and enlightening to the jury." *Lamar* v. *State* (1972), 258 Ind. 504, 282 N.E.2d 795. *See also: Gibbs* v. *Miller* (1972), 152 Ind. App. 326, 283 N.E.2d 592.

Jackman contends that the first three requirements were not met prior to introduction of the recording.

As to the first requirement, he argues that the evidence did not show that the recording was authentic and correct because portions of the actual conversation were omitted from the tape and the speaker on the recording was not properly identified as Danny Bailey.

The evidence does show that some of the conversation was missing from the recording. However, the omitted portion consisted only of "hello" and a few introductory remarks. All of the conversation regarding the accident was recorded. Mr. Stovall testified that there was no way to edit the recording after it was recorded and that if the recorder had been turned off during the recording, audible clicks would be evident to the listener. Moreover, Jackman presented no evidence tending to prove that any material portions of the conversation were deleted. This evidence was sufficient to allow the court to find that the recording was correct.

Jackman also contends that the recording was not shown to be authentic in that Bailey was not properly identified as the speaker. He argues that Stovall was not qualified to identify the voice as Bailey's since Stovall had never met Bailey before or after the recording and did not hear him testify at trial.

During his investigation, Stovall determined that Bailey had been at the scene of the accident and obtained his telephone number from the directory. When Stovall called Bailey's home number, Bailey identified himself.

The case of *Epperson* v. *Rostatter* (1929), 90 Ind. App. 8, 168 N.E. 126, dealt with a similar problem of identification.

"It is urged by the appellant . . . that the court erred in admitting in evidence the testimony of appellee as to the telephone conversation, the contention being that proper foundation for his identification had not been laid. The contention cannot prevail. It appears from the evidence that appellee desiring to communicate with appellant William A. Epperson in reference to the collision which resulted in the damage to her car, examined the telephone directory of the city of Evansville, and finding a number listed therein as that of appellant, she called the central station and asked to be connected with the number so listed, and when so connected the man who responded stated that he was William A. Epperson. These facts and circumstances were sufficient to make a *prima facie* case of identity." 90 Ind. App. at 10.

The reason for the rule is stated in McCormick's Handbook on the Law of Evidence, § 226, p. 554 (2d Ed. 1972).

"A somewhat easier problem is presented when the witness testifies that he himself placed a telephone call to a number listed to X, and that the person answering identified himself as X. In such a situation the accuracy of the telephone system, the probable absence of motive to falsify and the lack of opportunity for premeditated fraud all tend to support the conclusion that the self-identification of the speaker is reliable. Thus most courts today view proof of proper placing of a call plus self-identification of the speaker as sufficient proof of authenticity to admit the substance of the call . . . ."

This coupled with the fact that Stovall personally took the statements contained in the recording and thus could testify to the accuracy of the recording and the exact time and place it was taken was sufficient to qualify Stovall to identify the voice as that of Bailey. *Gibbs* v. *Miller, supra*. The first requirement of showing the recording to be authentic and correct was met.

Jackman next contends that opposing counsel did not lay a proper foundation showing that Bailey's statement was voluntarily given. The record does not support his contention. Bailey knew that Stovall was an insurance adjustor and was aware that the conversation was being recorded. He was free to hang up at any time. No evidence was presented which tended to show duress or coercion.

Jackman's basic argument in this regard is that a person must consent to a recording of his conversation that is offered as evidence. He further argues that since Bailey was a minor his consent would be inoperative even if given.

We take his argument on consent to mean that the statement must be voluntarily given. As stated above the evidence showed that the conversation was voluntary.

For the proposition that a minor is incompetent to consent to a recording of his statements, Jackman cites a portion of IC 1971, 34-1-67-1 (Burns Code Ed.) which provides:

> "Certain words, how construed.—In the construction of this act [34-1-1-1—34-1-68-1], the following rules shall be observed, when consistent with the context: . . .
> [Sixth] The phrase "under legal disabilities" includes persons within the age of twenty-one [21] years"

Jackman argues that a person under the age of twenty-one being "under legal disabilities" cannot effectively consent to a recording of his conversation. This section, however, is merely definitional. Another statute must create the right to which that definition specifically applies. The definition itself does not create a legal right. No other authority was cited for his contention, nor are we aware of such a rule of law.

The evidence showed that Bailey voluntarily gave ■ his statement, thus satisfying that requirement.

Jackman also argues that requirement three was not met.

> "(3) That all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given."

However, we are of the opinion that this requirement is applicable only to statements taken from criminal defendants.

Jackman finally argues that the recording violated 47 U.S.C. § 605 (1970). This argument is clearly in error for that section deals with unauthorized interception of communications. No interception occurs when one party in a telephone conversation simply records it for his own use. *Packhurst* v. *Kling*, 249 F.Supp 315 (E.D. Pa. 1965).

The voicewriter recording was properly admitted into evidence.

Judgment reversed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 320 N.E.2d 770.