RICHARD L. LANKFORD AND RUTH H. LANKFORD *v.* REBECCA J. LUCAS, JEAN GOSS, ADMINISTRATRIX OF THE ESTATE OF JOSEPH ADAMS, WALTER E. GEISKING AND GOLDEN IMPERIAL, INC.

[No. 2-1075A266. Filed September 13, 1977. Rehearing denied October 19, 1977. Transfer denied January 12, 1978.]

*John F. Townsend, Jr., W. Scott Montross, Townsend, Hovde & Townsend*, of Indianapolis, for appellants.

*James R. Fisher, Ice Miller Donadio & Ryan*, of Indianapolis, for appellees.

## STATEMENT OF THE CASE

LOWDERMILK, J.—This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

As the result of injuries suffered in an automobile accident, plaintiffs-appellants Richard and Ruth Lankford brought an action for damages against defendant-appellee Rebecca Lucas, also against the estate of Joseph Adams, and against Walter Geisking and Golden Imperial, Inc., his employer. The actions against Adams' estate, Geisking, and Golden Imperial were settled before trial, and a covenant not to sue those parties was signed by the Lankfords.

Since Lucas would not settle, a trial was held, and, based upon a jury verdict denying recovery, judgment was rendered in favor of Lucas. From that judgment and a subsequent denial of their motion to correct errors the Lankfords appeal.

## FACTS

The statement of facts most favorable to the judgment is as follows:

On February 26, 1971 at approximately 7:50 p.m. Lucas was driving her car in the northbound lane of Indiana State Highway 37 approximately ten miles north of Bloomington. Lucas was driving down a hill upon which the road curved gradually to the west. On that hill there were three lanes of traffic, one northbound and

two southbound. It was dark, and the road was dampened by light precipitation, but there was no ice or snow on the road.

Lucas was driving down the hill at approximately 45 mph when suddenly there appeared a southbound car in her northbound lane. She slammed on her brakes and turned her wheels sharply to the right. When her right front wheel hit the berm it gripped the dirt and caused her car to spin around so that she was off the road but facing South.

Behind Lucas' car was a tractor and semitrailer driven by Walter Geisking. Geisking had followed Lucas at a distance of four or five car lengths for a few miles. Geisking testified that he took his foot off the accelerator and began to slow down when he saw Lucas' car spin in front of him. He then saw a southbound car coming toward him in his northbound lane. Geisking's first inclination was to turn to the right to avoid a collision with the oncoming car, but he did not because he feared that the fumes in his empty gasoline tank truck would have exploded if he had collided with the rock wall which bordered the eastern berm of the roadway.

Geisking slammed on his brakes and his vehicle began to jackknife; the front of the semitrailer and the back of the tractor began to project eastward, and the front of the tractor moved westward close to and perhaps across the double yellow line which divided the northbound and the southbound lanes.

In its attempt to avoid a collision with Geisking's vehicle the southbound car, which had been driving in the northbound lane, cut back toward the southbound lanes. But in so doing it hit the right front corner of the tractor portion of Geisking's jack-knifing tractor and semitrailer, thereby shearing off the entire left side of that car and killing its driver, who was later identified as Joseph Adams.

After colliding with Adams' car Geisking's vehicle went into a full jack-knife, skidding sideways and obstructing all three lanes of traffic. As the trailer portion of Geisking's vehicle skidded up the east side of the northbound lane, it struck the right front

portion of Lucas' car, which because of her spinning stop was then sitting on the berm facing southward, and knocked it with sufficient force to spin it around again so that it came to rest in a northward position.

Kenneth Peterson, who was driving a southbound tractor which did not have its semitrailer attached, was able to avoid collision with Geisking's obstructing vehicle by maneuvering his tractor to the west berm and passing between the cab of Geisking's tractor and a rock wall which bordered the berm.

Richard and Ruth Lankford were not as fortunate as Peterson; they could neither maneuver nor stop. Their Volkswagen bus rammed the tractor portion of Geisking's vehicle, and, as a result, both were injured. At almost the same time a car driven by Bill Gilbert rammed the trailer portion of Geisking's vehicle, Gilbert was not seriously injured.

## ISSUES

The issue presented to this court for review is whether the trial court erred in refusing to give to the jury certain of plaintiffs' tendered jury instructions.

## DISCUSSION AND DECISION

Plaintiffs' tendered Instruction #2, which contained verbatim extracts taken from IC 1971, 9-4-1-57 (Burns Code Ed.), Indiana's highway speed statute, and plaintiffs' tendered Instruction #4, which contained verbatim extracts taken from IC 1971, 9-4-1-78 (Burns Code Ed.), Indiana's automobile turning statute, were not supported by the evidence and were, therefore, properly refused.[1] Lucas was driving 40 to 45 mph in a 65 mph zone. The road was damp but no ice or snow was present. Also, it is inconceivable that a jury would find Lucas negligent for not signaling before making an emergency turn into the ditch. No evidence was submitted at trial from which the jury could have reasonably inferred that Lucas' speed was excessive or that she made an improper or unsafe turn.

1.   See *Snow v. Cannelton Sewer Pipe Company* (1965), 138 Ind. App. 119, 210 N.E.2d 118 and *Ewing v. Timmons* (1963), 135 Ind. App. 274, 193 N.E.2d 497.

Plaintiffs' tendered Instruction #7 reads as follows:

"If you find that the defendant Rebecca J. Lucas was negligent and that plaintiffs were injured as a proximate result thereof, it is no defense to her that Joseph Adams or Walter E. Geisking were also negligent. In other words, if the negligence of Rebecca J. Lucas, alone or in combination with negligence of Joseph Adams or Walter E. Geisking or both of them, proximately caused the collision in which plaintiffs were injured, then your verdict should be for the plaintiff unless you find one or both of them guilty of contributory negligence."

Plaintiff's tendered instruction #7 is a correct statement of the law.[2] But it was properly refused[3] because the substance of this instruction was covered by the court in its instructions which were given to the jury as follows:

". . . It has been established that State Farm Insurance Company on behalf of Jean Goss, Administrator to the estate of Joseph Adams and Reliance Insurance Company on behalf of Golden Imperial Inc. and Walter E. Geisking have paid the total sum of $125,000 to Richard L. Lankford and a total sum of $23,850 to Ruth H. Lankford. You are instructed that such payments *do not constitute any evidence that Joseph Adams, Walter E. Geisking or Golden Imperial Inc. were negligent or that they were the only cause of the collision here involved.* . . .

\* \* \*

". . . If you find from consideration of all the evidence, that the injuries or damages sustained by the Plaintiffs were proximately caused by a third party or outside agency, *and that the negligence of the Defendant did not proximately cause or contribute to cause the injury to the plaintiffs, the the [sic] Plaintiffs are not entitled to recover from the Defendant.* . . ." (Our emphasis)

The instructions, *supra*, presented by the court pointed out that if the Lankfords' injuries were proximately caused by a third party (Adams and Geisking), and Lucas' negligence *caused or contributed* to the collision and subsequent injuries, then the Lankfords would be entitled to recover from Lucas. The court

---

2. See *Heerdink v. Kohmescher* (1932), 94 Ind. App. 296, 180 N.E. 683.

3. See *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210.

also admonished the jury that settlement payments from Adams' estate and from Golden Imperial, Geisking's employer, did not require the jury to conclude that those parties were negligent, nor the sole cause of the collision.

These instructions, *supra*, coupled with the instructions which the court gave to the jury on negligence, duty of care, and proximate cause, conveyed to the jury the concept that if they found Lucas negligent, and they found that her negligence was a proximate cause of the collision between the Lankfords' van and Geisking's vehicle then the Lankfords could recover from her in spite of the presence of negligent third parties.

Plaintiffs' tendered Instruction #8 reads as follows:

"Under some circumstances, the doctrine of sudden emergency excuse[s] negligent conduct which occurs after the sudden emergency arises. However, such rule of law does not apply where sudden emergency was created by the negligence of the person using it as a defense or excuse, nor does it apply where, in fact, no sudden emergency existed. Consequently, in this case, if you find that Rebecca J. Lucas was not, in fact, confronted with a sudden emergency or that even if she was, it was created by her own conduct, and such doctrine is no defense for her in this case." (Our insert)

Plaintiffs' tendered Instruction #8 was properly refused because it was an inaccurate statement of the law. The doctrine of sudden emergency does not *excuse* negligent conduct which occurs after the emergency arises, but rather it excuses conduct which in the absence of the sudden emergency might otherwise be negligent. The sudden emergency doctrine requires the person confronted with the emergency to do what an ordinary, prudent man would do in a similar situation.

Assuming, arguendo, that Instruction #8 was an accurate statement of the law, it was still properly refused because the essence of that instruction was contained in the sudden emergency instruction which the court gave to the jury as follows:

". . . Accordingly, if you find from a preponderance of the evidence that Rebecca Lucas was confronted with a sudden peril *not of her own making* which appeared so imminent that

she had no time for deliberation and if you further find from the evidence that she then and there exercised such care as an ordinarily prudent man would have exercised when confronted by a similar emergency, then she would not be liable for any damages resulting from the consequences of such emergency even if she might have taken another course of conduct which might in retrospect have been more judicious or safer or which might have even avoided the accident. . . ." (Our emphasis)

This instruction, *supra*, given by the court informed the jury that, before the doctrine of sudden emergency could be invoked, it would have been necessary to have found that Lucas did not create the peril with which she was confronted.

Plaintiffs' tendered Instruction #6 reads as follows:

"You are instructed that Rebecca J. Lucas claims she saw a southbound vehicle in the northbound lane of the highway in which she was driving and that she lost control of her automobile in her effort to avoid colliding with that vehicle. If you find that there was no such vehicle in the northbound lane and that a reasonably prudent driver in the exercise of ordinary care could have recognized that and not lost control, then you may find Rebecca J. Lucas was negligent."

Plaintiffs' tendered Instruction #6 was properly refused because it was repetitious of the sudden emergency instruction, *supra*, which the court gave to the jury.

Plaintiffs' tendered Instruction #5 reads as follows:

"You are instructed that Rebecca J. Lucas had a legal duty to keep a reasonable lookout ahead of her for other vehicles on the highway and to see and recognize that which could be seen and recognized by the exercise of ordinary care. If Rebecca J. Lucas failed to do so, then she was negligent."

The Lankfords contend that this instruction should have been given to the jury in order to define Lucas' duty to keep a reasonable and proper lookout. They contend that the general instruction concerning negligence, which the court gave to the jury, did not fully convey an essential element of their case, that being that Lucas did not keep a proper lookout.

In *Jackman v. Montgomery* (1974), 162 Ind. App. 558, 320 N.E.2d 770 and later in *Thornton v. Pender* (1976), Ind. App., 346 N.E.2d 631, this court held it to be reversible error for the trial court to refuse to instruct the jury concerning the defendant's need to maintain a proper lookout. Both cases agreed that general instructions on negligence and proximate cause were not sufficient to instruct the jury on the duty to keep a proper lookout.

We agree that the court erred in not giving plaintiffs' tendered Instruction #5 to the jury, but we are of the opinion that the court's refusal to give that instruction was harmless error, and, therefore, does not require a reversal of the judgment. *Jackman, supra,* and *Thornton, supra,* were both cases in which the court's refusal to give the proper lookout instruction was likely to have affected the outcome of the case. In the case at bar the court's failure to give the lookout instruction was not likely to have affected the outcome of the case.

There was not a shred of evidence presented to the jury which placed Adams' car anywhere but in the northbound lane going south. Both Lucas and Geisking testified that they saw a southbound car coming toward them in the northbound lane. All the witnesses who testified on the matter agreed that from the physical evidence Adams' car was the first southbound car to collide with Geisking's vehicle, yet none of those witnesses saw Adams ahead of them or beside them. It is without dispute that the left side of Adams' car was sheared off in a collision with the right front of Geisking's jack-knifing vehicle. Geisking's testimony was unequivocal when he testified that Lucas was completely off the road, and her abrupt stop had nothing to do with his losing control of his vehicle, that his loss of control was caused by the oncoming car. In view of this overwhelming evidence in favor of Lucas, the trial court's refusal to instruct the jury concerning Lucas' duty to keep a proper lookout did not affect the outcome of the case.

In *Honey Creek Corp. v. WNC Development Co.* (1975), 161 Ind. App. 145, 331 N.E.2d 452, 458, which was alluded to in *Thornton, supra,* this court stated:

"The general test on appellate review with respect to the impact of errors is whether it appears that a right result was reached. To ignore the errors the court must be affirmatively convinced that the right result was reached, notwithstanding the errors in the record. . . .

"Where it is apparent that the right result has been reached by the jury, and the giving or refusal of a particular instruction did not mislead the jury or prejudice the rights of the parties, no reversible error exists. . . ." (Citations omitted)

We are of the opinion that the trial court's refusal to give plaintiffs' tendered Instruction #5 was harmless error for the reason that it is apparent that the correct result was reached and the jury would not have found otherwise had said instruction been given.

Judgment affirmed.

Robertson, C.J. and Hoffman, J., by designation, concur.

NOTE—Reported at 367 N.E.2d 13.