### In the Matter of the ESTATE of Eleanor M. BAIRD, Deceased.

**Thomas A. WALING, Nominated Executor under the Last Will and Testament of Eleanor M. Baird, Deceased, Respondent-Appellant,**

v.

**Eleanor B. MILFORD, Individually and as Executrix of the Estate of Eleanor M. Baird, Deceased, and Lafayette National Bank, Special Administrator and Administrator With Will Annexed of the Estate of Eleanor M. Baird, Deceased, Petitioners-Appellees.**

No. 2–177A3.

Court of Appeals of Indiana, Second District.

Aug. 28, 1980.

Rehearing Denied Oct. 30, 1980.

Vaughan, Vaughan and Layden, Lafayette, Young and Young, Indianapolis, for respondent-appellant.

Baker and Daniels by Karl J. Stipher, Charles A. Hessler, Indianapolis, for petitioners-appellees.

SHIELDS, Judge.

## CASE SUMMARY

Thomas A. Waling appeals the trial court's judgment finding him unsuitable to serve as co-executor of the Last Will and Testament of Eleanor M. Baird.

We affirm.

## FACTS

The facts favorable to the trial court's judgment disclose Eleanor M. Baird died testate in Lafayette, Indiana on May 5, 1976. She was survived by one daughter, Eleanor B. Milford, her sole heir and only residuary beneficiary.

Mrs. Baird named Waling trustee of a trust created in her will and additionally bequeathed him 2,000 shares of common stock of TRW, Inc. The residue of her estate was bequeathed to Milford. Mrs. Baird named Waling and Milford to serve as co-executors.

Waling had been associated with the Baird family for many years, beginning as secretary to Mrs. Baird's husband in March of 1937. His responsibilities included keeping records and accounts of the Baird property, collecting rents, paying bills, and preparing federal income tax returns. He began keeping records for Mrs. Baird in 1942, and in 1946 took over management of her farms. Waling also served on the Board of Directors of the Fairfield Manufacturing Company, the family-owned business, from 1950 until 1976. For nine months before Mrs. Baird's death, Waling served with Milford as co-guardian of Mrs. Baird, keeping the records for the guardianship.

The day following Mrs. Baird's death the Lafayette National Bank was appointed special administrator in response to a petition by Milford objecting to Waling's appointment as co-executor. Milford alleged Waling's appointment would

"result in serious and recurring conflicts and disagreements between the co-executors; unduly delay and prolong the administration of the estate; cause the estate to incur unnecessary cost and expense; and prevent a harmonious and effective administration of the estate—all to the detriment of the estate and to the interest of petitioner therein as sole heir-at-law and sole residuary beneficiary under decedent's purported will."

After qualification of a special judge, the Bank requested an order requiring Waling to transfer to the special administrator Mrs. Baird's assets, which he was holding as former co-guardian. On the same day Waling requested the court to limit and restrict the powers of the special administrator pending determination of his qualifications as an executor. This petition was granted after a hearing by a second special judge qualified at Waling's request.

After the Bank submitted Mrs. Baird's will for probate, the trial court heard evidence concerning objections to Waling's appointment and entered the following order:

"Comes now Eleanor B. Milford, in person and by her counsel, and comes also Thomas A. Waling, in person and by his counsel.

"And the court having had under advisement the petition of Eleanor B. Milford charging that Thomas A. Waling is unsuitable to act as co-executor, the Court now finds that antagonism and animosity exists [sic] between the persons

who were named as co-executors and that Thomas A. Waling is a legatee under the terms of the will, both in his individual capacity and as trustee of a certain fund provided for by the terms of the will and that the residuary legatee of the estate is Eleanor B. Milford and that the evidence shows that Thomas A. Waling is a prospective claimant, if he so desires, in the estate and that he therefore is not suitable to act as co-executor with Eleanor B. Milford and that the costs of this proceeding should be paid as the Court in the administration of the estate shall determine. Judgment and Order accordingly."

From this judgment Waling perfected his appeal.

### ISSUES

Waling presents the following issues:

I. Whether the trial court abused its discretion in finding Waling unsuitable to serve as co-executor, therefore erroneously denying his appointment;

II. Whether the trial court erred in denying Waling a new trial because of misconduct by Milford's counsel;

III. Whether the trial court erroneously denied Waling a new trial because the trial court failed to disclose an alleged conflict of interest.

IV. and V. Whether the trial court erroneously denied Waling a new tri-

al because the trial court was biased and prejudiced and failed to disclose an alleged conflict of interest.

*ISSUE I*—Waling's Unsuitability to Serve as Co-executor.

■ A testator has a right to name an executor, thereby placing his property in the hands of one in whom he has confidence. *In re Estate of Workman,* (1970) 147 Ind.App. 523, 262 N.E.2d 408; *First National Bank of Moline v. Muscio,* (1972) 5 Ill.App.3d 216, 283 N.E.2d 42. Testator holds this power coextensive with his power to devise or bequeath the estate. *Farmers Loan and Trust Co. v. Security Trust Co.,* (1923) 79 Ind.App. 437, 138 N.E. 97; *In re Estate of Murphy,* (1976) Fla.App., 336 So.2d 697. However, exercise of this power is conditioned by the trial court's authority to find a nominated executor disqualified under IC 29–1–10–1 (Burns Code Ed.Supp. 1979).

The Indiana Probate Code (IC 29–1–1–1 et seq. Burns Code Ed.1972) empowers the trial court to deny appointment as executor to one "whom the court finds unsuitable." IC 29–1–10–1(b)(6) (Burns Code Ed.Supp. 1979).[1] This determination rests within the sound discretion of the trial court and will be set aside only if Waling establishes an abuse of that discretion. *Cf. Studabaker v. Faylor,* (1917) 66 Ind.App. 175, 114 N.E. 772

---

1. This section provides:

"(a) Domiciliary letters testamentary or domiciliary letters of general administration may be granted to one or more of the persons hereinafter mentioned, natural or corporate, who are not disqualified, in the following order:

(1) To the executor or executors designated in the will;

(2) To the surviving spouse, or to the person or persons nominated by the surviving spouse or to the surviving spouse and the person or persons nominated by the surviving spouse;

(3) To the next of kin, or to the person or persons nominated by them, or any of them or to the next of kin, or any of them, and the person or persons nominated by the next of kin or any of them;

(4) If there is no executor named in the will, or if the executor named in the will does

not qualify, or if there is no surviving spouse or next of kin, or if no such person files a petition for letters within thirty (30) days after the date of the death of the decedent, then to any other qualified person.

"(b) No person is qualified to serve as a domiciliary personal representative who is:

(1) Under eighteen [18] years of age;

(2) Of unsound mind;

(3) A convicted felon, · either under the laws of the United States or of any state or territory of the United States;

(4) A nonresident of this state, excepting that a nonresident individual or corporate fiduciary may qualify and serve as a joint personal representative;

(5) A resident corporation not authorized to act as a fiduciary in this state;

(6) A person whom the court finds unsuitable."

(applying the same standard of review under the prior statute).

Essentially Waling urges the trial court could disqualify him as unsuitable under IC 29–1–10–1 only if it found him to be dishonest or guilty of misappropriating testator's assets.[2] Therefore, because the evidence fails to support this kind of misconduct, the trial court abused its discretion in finding him unsuitable. We do not agree with Waling's interpretation of the statute.

Prior to 1954, the trial court was required to appoint the person or persons named in the probated will "who [were] *competent* by law to serve as such, and who [should] appear and qualify." Acts 1881 (Spec.Sess.) Ch. 45, § 6, p. 423.[3] *Hamilton v. Huntington*, (1945) 223 Ind. 143, 58 N.E.2d 349; *In re Stahl's Estate*, (1942) 113 Ind.App. 29, 44 N.E.2d 529; *Farmers' Loan and Trust Co.; Studabaker*. Those persons defined as incompetent to serve were those (1) under the age of 21 years, (2) convicted of a felony, or (3) adjudged incompetent to discharge the duties of an executor by reason of improvidence, habitual drunkenness, or other incapacity. Acts 1881 (Spec.Sess.) Ch. 45 § 6 at 423; *In re Stahl's Estate*, (1942) 113 Ind. App. 29, 44 N.Ed.2d 529. Because these grounds were inclusive of the trial court's statutory authority to disqualify a nominated executor as incompetent, this court strictly scrutinized a trial court's finding of incompetency. *In re Stahl's Estate, Farmers' Loan and Trust Co.*[4]

By substituting unsuitability for incompetency, and deleting its limited definition the legislature has enlarged the trial court's authority to disqualify a nominated executor. *See Merimee v. Brumfield*, (1979) Ind. App., 397 N.E.2d 315, 317–18. Exercise of that discretion must still, however, be reasonable. *In re Estate of Workman*, 147 Ind.App. at 529, 262 N.E.2d at 411.

Since its inclusion as a basis for disqualification, unsuitability has not been defined either by the Probate Code or by the courts.[5]

Jurisdictions with similar statutes have defined suitability to describe a person who is considered to have the capacity and the will to discharge the duties in the particular case with fidelity and efficiency. *Grossman v. Grossman*, (1962) 343 Mass. 565, 179 N.E.2d 900.

█ In reviewing the determination of a person's suitability to serve as executor, other appellate courts have held the trial court should carefully inquire into the person's character, integrity, soundness of judgment, general capacity, possible conflicts of interest, as well as additionally

---

**2.** As noted in the facts, Waling had managed Mrs. Baird's business affairs for many years. As co-guardian Waling also held certain assets later turned over to the estate.

**3.** Acts 1881 (Spec.Sess.) Ch. 45, § 6, p. 423 (emphasis added) provided:

"Whenever any will shall have been duly admitted to probate, the Clerk of the Circuit Court in which the same shall have been probated shall issue letters testamentary thereon to the person or persons therein named as executors who are competent by law to serve as such, and who shall appear and qualify.

"No person shall be deemed competent to serve as an executor, who, at the time of application for letters, shall, upon proof made before such Court or Clerk, be shown to be:

1. Under the age of twenty-one [21] years, or

2. To have been convicted of a felony, or

3. Who shall be adjudged by said Court or Clerk, incompetent to discharge the duties of an executor, by reason of improvidence, habitual drunkenness or other incapacity."

**4.** In *Farmers' Loan and Trust Co. v. Security Trust Co.*, (1923) 79 Ind.App. 437, 138 N.E. 97, the Indiana Appellate Court reversed the trial court's refusal to appoint a nominated executor residing in another county. This nonresidency was not a statutory ground for refusal. The Indiana Appellate Court in *In re Stahl's Estate*, (1942) 113 Ind.App. 29, 44 N.E.2d 529, held the trial court could not refuse appointment because of alleged disabilities or grounds for revocation to occur *in the future*.

The nominated executor will also be refused qualification if he does not meet a specific requirement established by the testator in the will. *Butler University v. Danner*, (1943) 114 Ind.App. 236, 51 N.E.2d 487.

**5.** In *Helm v. Odle*, (1959) 129 Ind.App. 478, 157 N.E.2d 584, this court found an administrator's breach of trust was an example of unsuitability but did not make a definitive determination of the significance of unsuitability.

consider the special conditions of the estate and those interested therein—creditors, legatees, and next of kin. *In re Quirin Estate*, (1976) 116 N.H. 845, 367 A.2d 594; *In re Crosby's Estate*, (1944) 218 Minn. 149, 15 N.W.2d 501. The Massachusetts Supreme Court described unsuitability as "not [being] restricted to instances of absolute unfitness but [as] including an unfitness arising out of the situation of the person in connection with the estate." *Comstock v. Bowles*, (1936) 295 Mass. 250, 260, 3 N.E.2d 817, 822–23. (Citations omitted.) Unsuitableness of one to act as a fiduciary may exist although actual misconduct or dereliction of duty is not shown. *Id., Quincy Trust Co. v. Taylor*, (1944) 317 Mass. 195, 57 N.E.2d 573.[6] *See generally* Annot., 18 A.L.R.2d 633 (1951).

■ With these considerations in mind, we now examine the trial court's finding of unsuitability. Because this determination is placed within the trial court's discretion, in reviewing the reasonableness of the court's determination, we must examine it in the light of its given reasons. *City of Elkhart v. Middleton*, (1976) 265 Ind. 514, 518, 356 N.E.2d 207, 210. This standard requires that a reason stated by the trial court justify the manner in which it exercised its discretion.[7] However, here, the trial court gave several reasons for the manner in which it exercised its discretion. Therefore, we need only find one correct reason to uphold its exercise of discretion.

In support of its decision, the trial court reasoned Waling was a legatee under the will, that he had a prospective claim against the estate, and that antagonism and animosity existed between Waling and Milford. These grounds of unsuitability may be divided into two categories: *one*, grounds relating to a financial interest in the estate; and *two*, grounds relating to interference with the administration of the estate.

### A

### *Financial Interest*

■ The mere fact an executor is a beneficiary under the will does not disqualify him. *Hamilton v. Huntington*, (1945) 223 Ind. 143, 58 N.E.2d 349; *see In re Estate of Lipchik*, (1975) 27 Ill.App.3d 331, 326 N.E.2d 464; *Gilmer v. Harris*, (1970) Tex.Civ.App., 460 S.W.2d 215. "When it comes to appointing a personal representative of the estate of a decedent the law favors those who have an interest therein." *Hamilton*, 223 Ind. at 149, 58 N.E.2d at 351. Therefore the finding of the trial court that because "Waling is a legatee under the terms of the will, both in his individual capacity and as trustee of a certain fund . . ." he is unsuitable to serve as co-executor was erroneous.

Also erroneous was the trial court's finding that because "Thomas A. Waling is a prospective claimant, if he so desires, in the estate . . . he is therefore not suit-

**6.** The Massachusetts Supreme Court discussed the statute providing for removal of an executor or an administrator if he is "unsuitable" for the trust:

"The statutory word 'unsuitable' gives wide discretion to a probate judge. Past maladministration of a comparable trust, bad character, misconduct, neglect of duty, or physical or mental incapacity, warrants a finding that an executor or administrator is unsuitable. Such a finding may also be based upon the existence of an interest in conflict with his duty, or a mental attitude toward his duty or toward some person interested in the estate that creates reasonable doubt whether the executor or administrator will act honorably, intelligently, efficiently, promptly, fairly and dispassionately in his trust. It may also be based upon any other ground for believing that his continuance in office will be likely to render the execution of the will or the administration of the estate difficult, inefficient or unduly protracted. Actual dereliction in duty need not be shown."

*Quincy Trust Co. v. Taylor*, (1944) 317 Mass. 195, 196–97, 57 N.E.2d 573, 574.

**7.** As this court explained, this type of review is required because

"[t]he [trial] court does have discretion. If the reason given by the court is not a valid basis for a particular exercise of discretion, it can be no more than conjecture on our part that once the court recognizes the invalidity of its original reason it will reach precisely the same exercise of discretion for other reasons."

*In re Marriage of Miles*, (1977) Ind.App., 362 N.E.2d 171, 174.

able to act as co-executor . . ."[8] Waling's interest as a claimant is not necessarily adverse to the fiduciary responsibilities of an executor. Recognizing the personal representative may have a claim against an estate, the Indiana Probate Code provides for the handling of such claims as ordinary and distinct transactions separated from the main stream of fiduciary obligations. IC 29–1–14–17, (Burns Code Ed.Supp., 1979). 1A J. Grimes, Henry's Probate Law and Practice 577 (7th ed. 1978). Waling's claims for compensation for past services could be satisfactorily resolved under this procedure.

### B

### *Interference with Estate Administration*

We now examine whether the trial court could properly find Waling unsuitable because his appointment would interfere with the orderly administration of the estate. Milford contended Waling's motives and actions demonstrated such lack of integrity as to constitute a breach of fiduciary duty, causing antagonism and distrust between them. Waling responds on appeal that ill-feeling alone does not justify his disqualification.

 Although the evidence was conflicting, there was sufficient evidence to indicate hostility between the nominated co-executors would interfere with the orderly administration of the estate. The events precipitating the antagonism between Waling and Milford occurred during and prior to the guardianship of Mrs. Baird,[9] centering around a recommendation by Milford to arrange a buy-sell agreement with Fairfield stock in order to transfer assets from Mrs. Baird's estate as part of an estate plan. The guardianship for Mrs. Baird was created for this purpose when it was agreed that she was not competent to sign the agreement. Soon after the guardianship was established Waling refused to

communicate directly with Milford, referring her instead to his attorney. Waling and Milford disagreed throughout administration of the guardianship as to the acceptability of the buy-sell agreement with the result a decision as to its execution was not reached prior to Mrs. Baird's death. The antagonism between the two was further aggravated by Waling's attempts to receive payment for past services rendered Mrs. Baird. This antagonism extended to the majority of decisions made during the guardianship. Waling and Milford violently and continuously disagreed throughout the administration of the guardianship culminating in Milford's request the trial court disqualify Waling as co-executor of Mrs. Baird's estate.

Giving due regard to Mrs. Baird's designation of Waling as co-executor with Milford, the trial court was confronted with antagonism between Waling, a named co-executor, and Milford as a named co-executor and residuary beneficiary of the estate. Administration of an estate under the Probate Code is designed primarily to promote orderly administration of the estate according to the wishes of decedent. *See* IC 29–1–16–2 (Burns Code Ed. 1972). Therefore, the trial court acted reasonably when it considered in its decision the hostility existing not only between the co-executors but also between Waling as co-executor and Milford as residuary beneficiary. The evidence supports the trial court's conclusion this hostility would interfere with an orderly and efficient administration of Mrs. Baird's estate. Therefore, although the trial court erred in its consideration of Waling's financial interest, its reason based upon hostility is valid. Because we find one valid reason for the trial court's exercise of its discretion, we uphold its exercise of discretion and find the trial court did not abuse its discretion in finding Waling unsuitable to serve as co-executor.[10]

---

**8.** We presume the court referred to Waling's requests for compensation for handling a large gift transfer of stock to Milford and for co-guardian fees.

**9.** Actions of the parties before the death of the decedent are relevant to the question of suita-

bility for appointment. *See Fountain v. Cabe*, (1979) 242 Ga. 787, 251 S.E.2d 529.

**10.** Because of the statutory limitations placed upon the trial court's discretion under the prior law to find a nominated executor incompetent, the hostility between Waling and Milford

*ISSUE II*—Whether opposing counsel's action prejudiced the trial judge and constituted reversible error.

Waling challenges opposing counsel's action in submitting to the trial court photocopies of cases and a portion of an unofficial transcript of another proceeding, arguing this action was designed to prejudice the trial judge. Milford responds any error was waived because Waling did not timely object and was further rendered harmless by the subsequent admission of the entire transcript without objection.

A review of the events discloses that on June 8, 1976, the second day of the hearing, counsel for Waling learned that materials which had not been given to him had been submitted to the trial judge. The following day copies of these materials were submitted to Waling's attorney; and on June 11, 1976, subject to verification of its accuracy, the entire transcript from which material was excerpted was admitted into evidence. On June 28, 1976, counsel for both parties stipulated to the accuracy of the transcript containing the handwritten corrections.

▮ Waling does not indicate where the alleged prejudicial material appears in the record and we are not disposed to search a record consisting of five volumes because of counsel's failure to comply with the appellate rules. It is the duty of the appellant to submit on appeal a record and brief which supports his claimed error and which is sufficient to permit an intelligent decision of the issue. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7); *Anderson v. Indiana State Employees' Appeals Commission*, (1977) Ind.App., 360 N.E.2d 1040. Consequently, Waling has waived this issue. Furthermore, Waling waived the right to claim error in the submission of the materi-

al to the trial court by failing to object at trial upon discovering the alleged prejudicial conduct. As Justice Arterburn observed in *J. I. Case Co. v. Sandefur*, (1964) 245 Ind. 213, 218, 197 N.E.2d 519, 521, "[w]e look with disfavor upon points raised for the first time on appeal in the higher court or in original actions without first raising the issue with specific objections thereto at the first opportunity in the trial court." A party may not wait until after receiving an unfavorable result to complain of errors in proceedings at trial or before trial. *Reid v. State*, (1978) Ind., 372 N.E.2d 1149; *White v. Crow*, (1964) 245 Ind. 276, 198 N.E.2d 222.

▮ Finally, were we to address the issue and find error, it would not be reversible error. The entire transcript from which the material was excerpted was received into evidence at trial and we certainly assume the trial court was fully advised on the law without benefit of the photocopied cases supplied by Milford's counsel.

*ISSUE III*—Exclusion of tape recording.

Waling urges the trial court erroneously excluded a tape recording he offered to impeach Milford. Milford responds Waling failed to lay a foundation demonstrating the tape was authentic and correct, or that the testimony elicited therein was freely given without any kind of duress. In general an exclusionary ruling will not be found erroneous if sustainable on any valid theory. *American United Life Insurance Co. v. Peffley*, (1973) 158 Ind.App. 29, 301 N.E.2d 651.

▮ Admission of a sound recording requires a foundation disclosing, in part, that the record is authentic and correct. *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795; *Jackman v. Montgomery*, (1974) 162 Ind.App. 558, 320 N.E.2d 770; *Gibbs v. Miller*, (1972) 152 Ind.App. 326, 283 N.E.2d 592.[11] Waling failed to introduce any evi-

---

would not have risen to the degree to render Waling incompetent. *Farmers' Loan and Trust Co. v. Security Trust Co.*, (1923) 79 Ind.App. 537, 138 N.E. 97. (Ill feeling between the beneficiaries and executor, although severe enough to make them enemies, did not affect the executor's capacity to serve.)

11. The cited cases indicate another element of a proper foundation for the admission of a tape recording is that the "testimony elicited was

freely and voluntarily made, without any kind of duress." *Lamar v. State*, (1972) 258 Ind. 504, 513, 282 N.E.2d 795, 800. Nevertheless, it seems inconsistent and illogical to exclude per se a statement in a civil action that is given involuntarily and at the same time admit a statement by defendant in a criminal action that is given involuntarily albeit without any "state action." *Trinkle v. State*, (1972) 259 Ind. 114, 284 N.E.2d 816. With some timidity we

dence to establish the authenticity or accuracy of the recording. Therefore, because he failed to present this essential element of a proper foundation, the trial court properly excluded the sound recording.

*ISSUES IV and V*—Alleged bias and prejudice and conflict of interest of the trial judge.

■ Waling argues he was denied a fair trial as the result of bias and prejudice of the trial judge. In support of his argument he sets forth a portion of the record involving the trial court's ruling on an evidentiary objection made by Waling during examination of a witness called by Milford.

Contrary to Waling's argument, the excerpted record merely reflects a commendable effort by the trial judge to explain the basis for his ruling to the parties and to let counsel for each party freely present his case. Waling fails to meet his burden of showing prejudicial error.

■ Furthermore, perusal of the record reveals no objection by Waling at trial to the trial judge's conduct. Failure to make such objection at trial waives the error. *Bennett v. State*, (1973) 159 Ind.App. 59, 304 N.E.2d 827; *Commercial Credit Corp. v. Miller*, (1972) 151 Ind.App. 580, 280 N.E.2d 856. *Carson v. Associated Truck Lines, Inc.*, (1968) 143 Ind.App. 431, 434–35, 241 N.E.2d 78, 79–90, dealt with this specific issue:

> "Although the appellant concedes that our laws provide for a change of venue, change of judge, or a request that a judge disqualify himself, no such motions were apparently made in this action. Nor were there any objections made at trial to the conduct of the court.
>
> ". . . The appellee notes that a search of the record shows no question was ever raised by the appellant concerning any alleged bias or prejudice of the trial court. If the appellant fails to point

out alleged misconduct of the trial court *during the course of trial* and give such court an opportunity to correct itself at that time, then the appellant waives this issue on appeal. *State ex rel. Anderson-Madison etc. v. Superior Ct.*, (1964) 245 Ind. 371, 199 N.E.2d 88; *White v. Sloss* (1964) 245 Ind. 289, 198 N.E.2d 219."

As pointed out by *Carson*, motions for change of judge and venue and for disqualification of judge are designed to avoid the problem of judicial prejudice. Having failed to avail himself of those motions or offered the objection necessary to preserve error, Waling may not pursue this issue on appeal.

Waling's final argument is the trial judge should have revealed his alleged friendship with Milford's trial counsel.[12] This is merely a restatement of his "bias and prejudice" allegation. Having made no objection at trial to the trial judge's conduct, he cannot now assert an underlying cause for prejudice (the friendship) as evidence of prejudice.

Finding no reversible error, we affirm the decision of the trial court.

SULLIVAN, J., concurs.

MILLER, J., sitting by designation, concurs.

---

suggest we may have erroneously engrafted onto the foundation for the admissibility of a recording an element mandated by the 4th and 5th amendments of the Constitution solely for the protection of a defendant in a criminal prosecution who is subject to "state action."

**12.** It is interesting to observe the stated basis of the alleged bias and prejudice is: (1) the special judge and opposing counsel's father were both employed by Indianapolis Light and Heat Co. in 1920 and (2) the special judge had served as a special judge in a proceeding in 1954 where opposing counsel had served as counsel for the prevailing party.