**In re The ESTATE OF Pearl C. POSEY, Deceased.**

**Raymond HARKRIDER, as Executor of the Will of Georgia Cory, Deceased, Raymond Harkrider, Individually, June Nelson and Betty Rogers, Appellants,**

v.

**LAFAYETTE NATIONAL BANK, ADMINISTRATOR w/w/a, Appellee.**

**No. 79A02–8801–CV–8.**

Court of Appeals of Indiana, Second District.

Jan. 24, 1990.

Richard S. Ewing, Douglas R. Brown, Stewart & Irwin, Indianapolis, for appellants.

Stephen R. Pennell, Stuart & Branigin, Lafayette, for appellee.

SULLIVAN, Judge.

The appellants, relatives of the decedent Pearl C. Posey, ("the family") challenge the trial court's appointment of Lafayette Na-tional Bank ("LNB") as successor personal representative of the estate of Pearl Posey.

We affirm.

Pearl Posey died on March 19, 1982. Floyd Wilcox was appointed executor of Pearl's estate by the Tippecanoe Circuit Court. Floyd died on July 1, 1987, prior to the closing of Pearl's estate. At the time of Floyd's death, a will contest was pend-ing in Warren Circuit Court. On July 8, the co-administrators of Floyd's estate filed a petition with the Tippecanoe Circuit Court requesting LNB be appointed as suc-cessor personal representative of Pearl's estate.

On August 5, 1987, the family, including, primarily, Pearl's brother, Raymond Hark-rider, filed their position entitled "Notice of Position and Desires of Pearl's Family in respect of Successor Personal Representa-tive." In their petition, the family object-ed, among other things, to LNB as succes-sor personal representative and requested opportunity for discovery.

At the outset of a hearing in the Tippeca-noe Circuit Court on August 31, 1987, Rich-ard Holmes, attorney for the family, filed a Motion to Withdraw Appearance and re-quested a continuance to allow the family to obtain new counsel. After the court sustained Mr. Holmes' Motion to With-draw, Mr. Harkrider renewed the request for a continuance. The court heard argu-ments from the attorney for the estate and from Mr. Harkrider concerning the suitabil-ity of LNB to be successor personal repre-sentative and the need for a continuance. The court then proceeded to appoint LNB as successor personal representative.

The family presents three issues which we restate as follows:

1. Whether the court erred in appoint-ing LNB as successor representative by failing to allow the family an opportunity to conduct discovery, to present evidence at trial and by failing to consider newly discovered evidence presented to the trial court following the hearing;

2. Whether the Tippecanoe Circuit Court had jurisdiction to appoint a suc-cessor personal representative; and

3. Whether the trial court ignored the guidelines of I.C. 29–1–10–1 in appointing LNB successor personal representative.

LNB argues that this appeal is frivolous and requests attorney's fees.

■ The family argues that the trial court erred by failing to grant them an opportunity to conduct discovery and to obtain and present evidence regarding a conflict of interest between LNB and Pearl's estate. During the hearing, Mr. Harkrider told the court in the form of argument, that he had spoken with a representative of LNB in July of 1979 concerning a guardianship of Pearl's estate. At that time, the representative allegedly advised Mr. Harkrider that there might be a conflict of interest between LNB and Floyd Wilcox which precluded LNB from accepting the guardianship of Pearl's estate. Mr. Harkrider then told the court that he thought a conflict may still exist because Mr. Wilcox had some farms of his own and he also farmed for other people and LNB had a farm department. Mr. Harkrider then argued that since Pearl's estate was claiming an 80 acre farm from Mr. Wilcox, it would be improper for the court to appoint LNB without further investigation into what business LNB did for Mr. Wilcox. Based on this claim of a conflict of interest, the family contends that the trial court had a duty to allow them time to obtain evidence to support their claim.

We first note that the court did not err in failing to consider Mr. Harkrider's argument because Mr. Harkrider was not under oath and did not testify before the court. His argument did not constitute evidence for consideration by the court. Moreover, Mr. Harkrider did not request that he be sworn and permitted to testify.

The trial court has wide discretion and latitude in matters concerning the appointment or removal of personal representatives. Its determination will not be reversed unless the court clearly abused its discretion. *Matter of Estate of Swank* (1978) 3d Dist., 176 Ind.App. 182, 375 N.E.2d 238.

The appointment of successor personal representatives is governed by I.C. 29–1–10–7 (Burns Code Ed.1972), which states, in relevant part:

"When a personal representative dies . . . the court may, and if he· was the sole or last surviving personal representative and administration is not completed, the court *shall* appoint another personal representative in his place." [Emphasis supplied].

Here, the court had a mandatory duty to appoint a successor personal representative. Public policy dictates that estates should be settled without unreasonable delay. *White v. Sloss* (1964) 245 Ind. 289, 198 N.E.2d 219. When the duly appointed executor or administrator dies, resigns or is removed, the estate is left without a managing agent and the assets of the estate are unprotected. Therefore, the trial court has a duty to appoint a successor personal representative at the soonest possible time.

In this case, the court had to weigh the need for a successor personal representative against Mr. Harkrider's assertion that a conflict of interest might possibly exist. We cannot say that the court's decision to appoint LNB as successor personal representative without granting additional time to the family to obtain evidence against LNB was an abuse of discretion. Therefore it was not error for the court to appoint LNB without granting the family a continuance.

It is important to note that the family was not left without remedy. If evidence was later discovered showing LNB to have a conflict of interest, the family could have petitioned the court for removal of LNB as personal representative under I.C. 29–1–10–6 (Burns Code Ed.Supp.1989).

■ The family argues that the trial court erred in failing to consider "newly discovered evidence" contained in Mr. Harkrider's Affidavit attached to their Motion to Correct Errors. The affidavit sets out the particulars concerning Mr. Harkrider's meeting with a representative of LNB in 1979 after which Mr. Harkrider was told by the representative that LNB might have a conflict of interest with Floyd Wilcox if it were to undertake the guardi-

anship of Pearl's estate. This evidence is substantially the same as the argument Mr. Harkrider presented to the court at the hearing. This evidence cannot be considered to be "newly discovered" within the meaning of T.R. 59. *See, Briggs v. Clinton County Bank and Trust Co.* (1983) 2d Dist.Ind.App., 452 N.E.2d 989; *Trout v. Summit Lawn Cemetery Ass'n* (1974) 1st Dist., 160 Ind.App. 552, 312 N.E.2d 498. Mr. Harkrider's argument at the hearing shows that the family could have produced the same evidence at the hearing that was subsequently presented with their Motion to Correct Errors.

Furthermore, Mr. Harkrider's affidavit only addresses a conflict that might have existed in 1979. It contains no solid facts to indicate that a conflict existed at the time of the appointment of LNB as successor representative. LNB filed with their response to the family's Motion to Correct Errors, affidavits of Kathryn Wilcox, widow of Floyd Wilcox, and Ralph Jackson, Vice–President of Agricultural Services for LNB. Both Mrs. Wilcox and Mr. Jackson stated in their affidavits that LNB's only relationship with Floyd Wilcox was that Floyd maintained a joint checking account with his wife at LNB and that prior to March 1, 1976, Floyd was a tenant of a farm managed by LNB. Therefore, the court did not have before it any facts of a current conflict of interest. With respect to the alleged newly discovered evidence, it was not an abuse of discretion for the court to deny the Motion to Correct Errors filed by the family.

■ The family next argues that the Tippecanoe Circuit Court lacked jurisdiction to appoint a successor personal representative because a will contest was pending in Warren Circuit Court. Although the record before us does not include a record of any of the proceedings concerning the will contest in Warren Circuit Court or the venue of those proceedings, both parties admit either in their briefs or in memoranda appearing in the record that probate of Pearl's estate began in Tippecanoe County. A will contest was subsequently filed and

that proceeding was venued to Warren County.

The family contends that the court having a will contest pending has exclusive jurisdiction to appoint a successor personal representative. In support of this position, appellants cite *In re Barger's Estate* (1943) 114 Ind.App. 129, 51 N.E.2d 104. That case involved a will contest in which all of the proceedings were in Adams Circuit Court. A change of venue was not a part of the proceedings. An heir of the decedent sought the appointment of a special administrator pending the final determination of the appeal in the suit contesting the will. The appellant challenged the court's order appointing a special administrator. The court held that when the validity of the will is being challenged, the trial court has jurisdiction provided by statute to appoint a special administrator. *Id.* at 137, 51 N.E.2d at 107.

We do not disagree that the court may appoint a special administrator when the validity of the will is being contested. This procedure is provided for by statute. *See,* I.C. 29–1–10–15 (Burns Code Ed.Supp. 1989). This reasoning does not, however, lead to the conclusion that the Warren Circuit Court had exclusive jurisdiction to appoint a *successor* personal representative. A successor personal representative differs from a special administrator. The family argues that "when the Warren Circuit Court action was filed, the issue of the appointment of a successor personal representative did not exist because Wilcox was still alive." Appellant's Brief at 26. The fact that Wilcox was still alive at the time of the will contest did not prevent the family from seeking the appointment of a special administrator *pendente lite.* Whether such a request was filed, we do not know. The Warren Circuit proceedings are not before us. Nevertheless, *In re Barger's Estate, supra,* does not persuade us that following the death of Floyd Wilcox, the Tippecanoe Circuit Court lacked jurisdiction to appoint a successor personal representative.

Change of venue in probate proceedings is governed by I.C. 34–2–10–1 (Burns Code

Ed.Repl.1986). That statute allows for a change of venue

"[i]n any action proceeding, or matter, of any character or nature whatever, relating to, connected with or involving the estate of a decedent ... for the same reasons, and upon the same terms and conditions, upon which there may be ... a change of venue from the county on any civil action."

However, the venue statute also contains the following proviso:

"Provided, however, That nothing herein contained shall be construed to authorize a change of venue from the county of the administration of the estate of a decedent." I.C. 34–2–10–11.

We interpret this statute to mean that the basic ministerial functions associated with administering an estate are to be performed by the court issuing the original letters testamentary or letters of general administration. *See, State ex rel. Stockton v. Leopold* (1949) 227 Ind. 426, 86 N.E.2d 530. From the arguments presented on both sides of this issue, it appears that the Tippecanoe Circuit Court issued the original letters. Since appointment of a successor personal representative is a ministerial function associated with the proper administration of the estate, the Tippecanoe Circuit Court was the proper court to make the appointment.

Furthermore, even if the family were correct in their assertion that the Warren Circuit Court was a proper court to appoint a successor personal representative, they have failed to show how they were prejudiced. Their brief states, "It is *judicial economy* and the orderly determination of disputes the exclusive jurisdiction rule fosters." Brief of Appellants at 28. [Emphasis in original.] We agree that judicial economy may be a consideration. However, we disagree that a reversal at this point would foster the judicial economy with which appellants are concerned.

■ The family next alleges that the trial court erred in not following the preferences for appointment of a personal representative as set forth in I.C. 29–1–10–1 (Burns Code Ed.Repl.1989). That statute provides, in relevant part:

"(a) Domiciliary letters testamentary or domiciliary letters of general administration may be granted to one (1) or more of the persons mentioned in this subsection, natural or corporate, who are not disqualified, in the following order:

(1) To the executor or executors designated in the will.

(2) To the surviving spouse, or to the person or persons nominated by the surviving spouse or to the surviving spouse and the person or persons nominated by the surviving spouse.

(3) To the next of kin, or to the person or persons nominated by them, or any of them or to the next of kin, or any of them, and the person or persons nominated by the next of kin or any of them.

(4) If there is no executor named in the will, or if the executor named in the will does not qualify, or if there is no surviving spouse or next of kin, or if no such person files a petition for letters within thirty (30) days after the date of the death of the decedent, then to any other qualified person." I.C. 29–1–10–1.

Although the preferences set forth in this statute apply specifically to the initial appointment of a personal representative, the appointment of a successor personal representative is governed by the same rules and provisions that apply in qualifying the first personal representative.[1] *See In re Stahl's Estate* (1942) 113 Ind.App. 29, 44 N.E.2d 529.

The family contends that, as next of kin, one of them was entitled to a preference over the appointment of LNB. The preferences set forth in I.C. 29–1–10–1 are no longer mandatory. Although the appointment of next of kin is preferable to the

---

1. The preferences provided for by statute apply to the appointment of successor personal representatives notwithstanding the statement to the contrary found in Henry's Indiana Probate Law and Practice, Sec. 806, p. 348, Eighth Ed. (1989): "No priorities will apply in the appointment of a successor, unless the appointment is sought within thirty days after the decedent's death."

appointment of a stranger, the court is given discretion to choose the personal representative and may deny appointment as executor to one "whom the court finds unsuitable." I.C. 29–1–10–1(b)(5); *Matter of Estate of Baird* (1980) 2d Dist.Ind.App., 408 N.E.2d 1323. The court's appointment will be set aside only if the court abused its discretion. *Id.*

In choosing to appoint LNB as the successor personal representative rather than Mr. Harkrider or another member of the family, the court said,

> "I think you're [Harkrider] in a conflict of interest here as far as the latest Supreme Court decision which assesses you and other members of the family attorney fees for some of the appeals and actions that have been taken, so you would not be a disinterested party, and I think we're much better off with a corporate fiduciary." Record at 115–116.[2]

The family contends that the estate was not a party to the action in which attorney's fees were awarded so there could be no conflict of interest. However, Floyd Wilcox, who was guardian of Pearl's person, and LNB, who was guardian of Pearl's estate, were named parties. Any attorney's fees incurred as a result of defending against Mr. Harkrider's appeal would be chargeable to the estate under I.C. 29–1–10–13 (Burns Code Ed.1972) had the court not awarded attorney's fees against the family. Therefore, we cannot hold that the trial court abused its discretion in choosing LNB over Mr. Harkrider or the other members of the family as successor personal representative.

◼ The final issue presented is whether this appeal was frivolous, warranting an award of attorney's fees against appellants under the authority conferred upon us by Appellate Rule 15(G). Our Supreme Court presented the standard of review in determining when sanctions are appropriate under A.R. 15(G) in *Orr v. Turco Manufacturing Co., Inc.* (1987) Ind., 512 N.E.2d 151. In that case, the court held that "a discretionary award of damages has been recognized as proper when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Id.* at 152. Further, the court cautioned,

> "in exercising its discretionary power to award damages on appeal, an appellate tribunal must use extreme restraint. Notwithstanding the harmful delay occasioned by crowded judicial dockets and limited resources, we cannot fail to recognize that the imposition of punitive sanctions does have significant negative consequences. It may punish, and will deter, the proper exercise of a lawyer's professional responsibility to argue for modification or reversal of existing law. It will have a chilling effect upon the exercise of the right to appeal. It will discourage innovation and inhibit the opportunity for periodic reevaluation of controlling precedent.

> \*  \*  \*  \*  \*  \*

> To facilitate these objectives, we must invite, not inhibit, the presentation of new and creative argument. We therefore hold that punitive sanctions may not be imposed to punish lack of merit unless an appellant's contentions and argument are utterly devoid of all plausibility." *Id.* at 152–153.

Although we have not been persuaded by the arguments presented by the family, we cannot say they are utterly devoid of all plausibility. Nor can we say, on review of the arguments presented to us that this appeal was pursued in bad faith. *Cf. Matter of Guardianship of Pearl Posey* (1987) Ind., 512 N.E.2d 155, *appeal after remand*, (1988) 1st Dist.Ind.App., 532 N.E.2d 9. Therefore, we deny appellee's request for appellate attorney's fees.

Judgment affirmed.

SHIELDS, P.J., and GARRARD, J., concur.

---

2. The comment refers to *Matter of Guardianship*  of *Pearl C. Posey* (1987) Ind., 512 N.E.2d 155.