GENERAL GRAIN, INC., v. GOODRICH, ETC.

[No. 19,933. Memorandum Opinion filed February 15, 1965. Opinion on the Merits filed December 7, 1966. Rehearing denied January 3, 1967. Transfer denied June 6, 1967. Rehearing on denial of Petition to Transfer denied September 12, 1967]

*William H. Krieg, John S. Grimes, Donald A. Schabel, Arch N. Bobbitt, Frank M. McHale* and *McHale, Cook & Welsh,* of Indianapolis, and *Russell I. Richardson,* of Lebanon, for appellants.

*Merle H. Miller, Donald F. Elliott, Jr., Alan H. Lobley,* and *Ice, Miller, Donadio & Ryan,* of counsel, of Indianapolis, and *Scifres & Hollingsworth,* of counsel, of Lebanon, for appellees.

## OPINION ON THE MERITS

BIERLY, J.—This appeal emanated from an adverse judgment against the defendant on the 18th day of July, 1962, in a trial heard in Boone Circuit Court on change of Venue from the Superior Court, Room 2, of Marion County.

Appellees brought this action in the Superior Court of Marion County in a cause entitled: *John Beals, et al.* v. *General Grain, Inc., and Acme Goodrich, Inc.* The plaintiff, John Beals, represented plaintiffs in one hundred and four (104) separate suits filed in said court against a common defendant under Section 37, of Indiana General Corporation Act, the same being Burns' 25-236, 1960 Replacement, which is as follows:

"If any shareholder of any corporation a party to a merger or consolidation who did not vote in favor of such merger or consolidation at the meeting at which the agreement of

merger or consolidation was adopted by the shareholders of such corporation, shall, at any time within thirty (30) days after such adoption of the agreement of merger or consolidation by such shareholders, object thereto in writing and demand payment of the value of shares, the surviving or new corporation shall, in the event that the merger or consolidation shall be made effective, pay to such shareholder, upon surrender of his certificates therefor, the value of such shares at the effective date of the merger or consolidation. If within thirty (30) days after such effective date the value of such shares is agreed upon between the shareholder and the surviving or new corporation, as the case may be, payment therefor shall be made within ninety (90) days after the effective date. If, within thirty (30) days after such effective date, the surviving or new corporation, as the case may be, and the shareholder do not so agree, either such corporation or the shareholder may, within ninety (90) days after such effective date, petition the public service commission of this state, if the corporation be a public utility, or the circuit or superior court of the county in which the principal office of the corporation is located, if the corporation be not a public utility, to appraise the value of such shares; and payment of the appraised value thereof shall be made within sixty (60) days after the entry of the judgment or order finding such appraised value. The practice, procedure and judgment in the circuit or superior court upon such petition shall be the same, so far as practicable, as that under the eminent domain laws in this state; and the practice, procedure and order before the public service commission upon such petition shall be as prescribed by law and the rules of the commission.

"Upon the effective date of the merger or consolidation any shareholder who has made such objection and demand shall cease to be a shareholder and shall have no rights with respect to such shares except the right to receive payment therefor. Every shareholder who did not vote in favor of such merger or consolidation and who does not object in writing and demand payment of the value of his shares at the time and in the manner aforesaid, shall be conclusively presumed to have assented to such merger or consolidation. [Acts 1929, ch. 215, § 37, p. 725.]"

These plaintiffs were holders of preferred stock of Acme-Goodrich, Inc., and were also dissenters to the merger of

Acme-Goodrich, Inc., into Defendant, General Grain Inc., on August 10, 1958.

Prior to the merger the Indiana Securities Commission, over the objections of appellees, found and ordered that the merger was fair and equitable to all stockholders.

Appraisers were appointed by the Superior Court of Marion County, to determine the value of the preferred stock held by the appellees.

The court-appointed appraisers reported their approval of the value of the cumulative preferred stock of Acme-Goodrich, Inc., as of August 12, 1958, as follows:

> 5% Series A Preferred, par value $100.00 at $66.25 per share or 66.25% of par;
> 4% Series B Preferred, par value $24.00, at $13.00 per share or 54.17% of par.

Exception was taken by appellees to this report on these grounds:

> (1) That the values fixed by the appraisers for the Series A and B Preferred Stock of Acme-Goodrich, Inc., in said report were too low;
> (2) That the report was contrary to the Court's instructions to the appraisers, and
> (3) That the report should have included interest on the appellee's stock from August 12, 1958.

The appellant excepted to said report on the ground that the values fixed by the appraisers for the stock were excessive.

Thereafter, the proceedings were venued to Boone Circuit Court, as heretofore stated, and trial was had by a jury which returned a verdict valuing the preferred stock as follows:

> 5% Series A, par value $100.00, at $85.00 per share or 85% of par.
> 4% Series B, par value $24.00, at $20.40 per share or 85% of par.

The court entered judgment on the verdict in favor of the appellees against the appellant in the total sum of $585,180.19. Additionally, that appellees recovered from appellant their costs, which the court stated were to include the one-half (½) of the appraisers' fees theretofore paid by appellees.

Subsequently, appellant filed a motion to modify the judgment on August 3, 1962, and on the same day filed a motion for a new trial. Both said motions were overruled on August 22, 1962.

Appellant assigns as error the overruling of its motion for a new trial, and the overruling of its motion to modify the judgment.

Appellant moved for a new trial on the following grounds: First, that the court erred in holding the defendant initially liable for the payment of one-half of the fees for services allowed to the appraisers; Second, misconduct of the prevailing party during the course of the trial; Third, error in the assessment of the amount of recovery in that the amount is too large; Fourth, the verdict of the jury is not sustained by sufficient evidence; Fifth, the verdict of the jury is contrary to law; and Sixth, error of law occurring at the trial, to-wit:

(1) The court overruled certain objections of the defendants and erred in giving instructions on its own motion to which appellant duly objected.

(2) That the court erred in giving plaintiff's Instruction No. 3, to which appellant duly objected.

(3) That the court erred in refusing to give to the jury certain instructions at the request of the defendant.

(4) That the court erred in modifying the defendant's Instruction No. 12, by changing the word "should" to "may," and then giving said Instruction to the jury.

Appellant also assigns as error that the trial court erred in determining that the appellees are entitled to recover interest from the date of the merger on the value of their stock.

The court's Instruction No. 8, reads in part as follows:

"I also instruct you that the plaintiffs are entitled to interest at the rate of six percent (6%) per annum from August 12, 1958, on the respective amounts to which they are entitled as determined by your verdict. . . ."

The crux of appellant's argument is that Section 37, of the Indiana General Corporation Act, does not provide for interest, and that in the absence of a statute or contractural provisions providing therefor, appellees are not entitled to interest from the effective date of the merger to the date of the judgment.

Appellant is correct in that the Indiana Acts (Burns' Ind. Stat. Ann. § 25-236, 1960 Replacement) do not specifically provide for interest, but does provide in part:

". . . The practice, procedure and judgment in the circuit or superior court upon such petition shall be the same, so far as practicable, as that under the eminent domain laws in the state. . . ."

The apparent intent of the legislature was to adopt all the *principles* and *practices* of the eminent domain laws which could reasonably be applicable to the appraisal remedy.

Appellant further contends that inasmuch as payment of the value of appellees' stock is not due until sixty (60) days after the entry of the judgment in the action finding the appraisal value of such stock, the interest will not begin to accrue on the value until it become due.

The eminent domain laws of Indiana were promulgated in 1905. At the time the Indiana General Corporation Act was enacted in 1929, the eminent domain laws did not provide for interest to the party whose stock was condemned. The granting of interest in domain proceedings from the date of the taking, has long been recognized by the Indiana Courts. See: *Schnull* v. *Indianapolis, etc. R. Co.*

(1920), 190 Ind. 572, 131 N. E. 51. It is the contention of the appellant that this has no applicability in the case at hand, because it does not follow within the "practice, procedure and judgment," of the eminent domain laws. Appellant further attempts to distinguish what is generally considered to be the distinction between "adjective law" and "substantive law." Thus, appellant contends that the awarding of interest from the time of taking under the domain proceedings is the application of substantive law; and, hence, would have no application to the case at bar in asserting that the "practice, procedure and judgment" has application only to "adjective law."

It would seem, as appellees assert, that had the legislature intended that interest run from the time of taking, it would not have added the word "judgment," for the words, "practice and procedure," would have been sufficient to convey the thought it wished to convey.

Appellees concede that the form of the judgment is confirmed by the applicable practice and procedure, but that the term "judgment" implies that it is a determination of the respective rights and duties of the parties involved. In *Lake Erie and Western Railway Company* v. *Kinsey* (1882) 87 Ind. 514, 517, 518, the Supreme Court stated:

"The verdict of the jury and the *judgment* of the court determine what that just compensation is." (Emphasis supplied.)

The legislature saw fit to provide for the rights of dissenting shareholders in cases involving corporation mergers and consolidations. It sought to remedy a situation in which the minority shareholders were at the mercy of the majority shareholders in questions such as presented in the case at bar. As a result it enacted legislation which expressed the public policy for the protection of the minority interests against the demands of the majority interests. The legislature realized that it would be equally unfair to the majority in-

terests to permit the minority to block a merger or consolidation, so it adopted the legislation with a balancing of those interests in mind. Hence, it determined that the applicable principles of the eminent domain law would be most equitable to all concerned. As a consequence thereof, if a minority shareholder objected to a merger or consolidation, he could file his written objection thereto, and demand payment from the corporation of the appraised value of his share. Unless an agreement were reached between the parties of interest as to the value of the share or shares, condemnation of the shares are permitted at the appraisal value, thus enabling the corporation to go forward with its plans to merge and the minority shareholder or shareholders would receive compensation for the appraised value of the stock.

The appellees contend that it was the legislative intent that interest be a part of the judgment under the eminent domain proceedings, and that should this not be the law, then the minority shareholders would not only be deprived of a voice in the management of the corporation, but would be deprived also of their dividends, and any appreciation in the value of their stock pending the determination of that value, and in addition any interest from the date of taking.

As heretofore stated, the eminent domain laws of Indiana were passed in 1905, and at the time the Indiana General Corporation Act passed in 1929, no provision was made for interest to the party whose shares of stock were condemned. But in 1965, the General Assembly of Indiana amended the eminent domain laws to specifically provide for interest from the date of taking to the date of judgment. Although the right to interest was not specifically provided for prior to the 1965 amendment, the efficacy of the amendment was merely a codification of prior practice and interpretation by the Supreme Court of Indiana. *State* v. *Young* (1964) 246 Ind. 52, 199 N. E. 2d 694. As the original eminent domain laws did not specifically provide for interest

from the date of taking, we may not go beyond the statutes and adopt the case law as part of the *practice, procedure* and *judgment* of the eminent domain laws. Furthermore, a serious question remains as to whether the right to interest could be characterized as part of the practice, procedure, and judgment of the eminent domain law, in order that interest could be granted dissenters under the Indiana General Corporation Act. The right to interest is more in the nature of a substantive right than a procedural right.

The court points out that under the Indiana Act, dissenting shareholders upon the effective date of the merger shall cease to be shareholders, and shall have no rights with respect to such shares except the right to receive payment therefor. The result reached is certainly an anomoly and unfair to the dissenters as they are not only disallowed interest from the effective date of the merger, but are also deprived of the opportunity to participate in the management of the corporation and in dividends.

This glaring injustice of the Indiana Act is a matter for the General Assembly, but this court should not concern itself with either the expediency nor need for corrective legislation. The court is charged with the responsibility to interpret and construe legislative enactments, and it is beyond the power of the court to legislate by judicial fiat.

This court is of the opinion that, like any other unliquidated claim, appellees are not entitled to interest either under the common or statutory law as the court finds them to be until final judgment in the matter, unless there is a specific finding and decision, supported by competent substantial evidence, that appellant has engaged in tactics of delay and harrassment, in which event, interest lawfully may be assessed as the statutes provide sixty (60) days, after the report of the appraisers, if such report or additional allowances finally are adjudged.

As we view the inquiry, now before us on appeal, there was but a single issue before the trial court for disposition, even though it truly may be said that the solution may have involved a number of elements for consideration in arriving at a fair and just determination of said issue. That single issue was the fair market value of a Series A 5% preferred stock, and the Series B 4% preferred stock of Acme Corporation owned by plaintiffs who are appellees in this appeal, and who properly objected to the merger of the company, Acme Corporation with appellant-appellees and appellants both were entitled to have a determination in the trial court of such fair market value, and to a verdict and judgment accordingly.

The record presented to us herein does not disclose that said determination was fairly and impartially obtained inasmuch as there appears to have been error in the admission and exclusion of evidence and consequential error in the instructions which permitted the jury both to be uncertain about and wander from their fundamental duty to decide and return a verdict based exclusively upon the fair market value of the stock owned by appellees.

While the different elements of value, such as book value, liquidating value, stock market value, evidence of sales in the market, the type of market available, the condition of the issues financial, managerial, (and) past and their present, as well as future possibilities and probabilities together with all the other elements which tend to affect the fair market value, for cash, of course, are worthy of consideration, such consideration could lawfully be and should have been limited in their application to the single and exclusive and final purpose of finding and deciding the fair market value to which appellees and appellants were entitled to have adjudicated.

We undertake to say that had the preferred stocks been listed on some exchange, and if there was active day-by-day trading in the said stocks, with high and lows, there might

be established perhaps a different fair market value than the mean of the high and low on the day that the merger took affect. This would be especially true if there is what is called a lean market, a "Bull" or a "Bear" market, or an unlawful "rigged" market designed for the particular occasion. Nonetheless, such market as was or had been, or immediately would be available should furnish, at least some evidence of the market value on the merger date.

We all know that "the market" is enigmatic. Investors make or lose money "in the market" in countless and devious ways. Always, it seems to us, that the judgment or perhaps "guess" factor is involved. So-called "tips" have caused the uninformed serious losses. Markets became "volatile," both as a whole, in specific issues and in specific fields; they also became inert. General economic conditions, the state of mind of the investor, government economics, political, foreign and domestic relations often "affect" the market on any single day or for certain periods. With all these elements, and others, which go to make up "the market," no one or no group, especially a court or a jury safely can rely upon the market *alone* to determine the fair market value of a particular security on any given day. Then, too, we have the "shorts" and the "longs." Presently, and then, we suspect, there were those who purchased for capital gains, for income, for security, and for a myriad of other reasons. There are those investors whose philosophy is based upon the "future" because, perhaps they have been able, usually with the aid of the so-called analysts to determine to their own satisfaction that "the market" will go "up" or "down" on the particular security they are considering.

In the instant case, we conclude that the market in the securities, which are the subject of this inquiry was "too thin" and purchases and sales, as shown by the evidence, were not sufficiently close to the date of the merger, to do any more than furnish evidence for con-

sideration by the jury in arriving at the fair market value of the preferred stock in question on the merger date.

The basic condition of Acme-Goodrich was a proper subject of consideration. In this regard, it seems logical to conclude from the general purport and tenor of the evidence, that the corporation was not financially well. Its financial and economic history for a number of years prior thereto is not revealed by the evidence to have been thriving. Indeed, the evidence tends to disclose that it was short of working capital; its capital requirements from earnings were almost destructive of probable future success; its book value had been bolstered by unsound but perhaps necessary "adjustments." Something had to be done to extricate it from its sad financial capital funding requirements from which relief had been sought but refused as revealed by the general trend of the evidence.

Despite the unhealthy financial conditions of the corporation which we think normally would affect adversely the fair market value of appellees' preferred stock, the inquiry in the trial court appears to have stressed the book value or liquidating value of said stock. This is evidenced by the admission and rejection of evidence during the trial and by the instructions to the jury. By the court's said instructions, it is clear that the jury, who themselves probably were not adept in this field, and the guide lines of the instructions being so confusing, were permitted to determine the issue on "value" instead of fair market value. Indeed, it is fair to say and to concede that the verdict of the jury, under the instructions of the trial court, stressed and over emphasized the means of reaching a verdict in an unlawful manner, and in such a manner as to produce an erroneous conclusion and verdict by the jury. No more inaccurate method possibly could have been employed by the jury in calculating its verdict than that of taking the book value or liquidating value of the stock, as reflected in the financial records of the corpora-

tion as a starting point. These records were fictional, and no good purpose was served by the use of them without prior adjustment to the facts as they were shown to have existed.

These instructions, considered as a whole, were not proper and could and did lead to a totally and wholly incorrect verdict which this court cannot countenance. The verdict should have been based solely and exclusively upon the fair market value of appellees' securities which they did not wish to subject to the merger. The instructions were not such, as to bring such result. Instead, they were at least wavering, not clear, and did not invest the jury with the proper and appropriate methods to establish such fair market value.

In conclusion, we hold that appellant's motion for a new trial should have been sustained, and to overrule it was reversible error.

Judgment reversed, with instructions to the trial court to sustain appellant's motion for a new trial.

Prime and Smith, JJ., concur.

Mote, P. J., concurs.

Carson and Faulconer, JJ., concur in result.

Wickens, C. J., and Hunter, J., not participating.

### PETITION FOR REHEARING

BIERLY, J.—Appellees and each of them pursuant to Rule 2-22 of the Supreme Court, filed a petition on December 23, 1966, for a rehearing of this cause "upon the ground that the Court's decision in this cause is thought to be erroneous." Also on said date, appellees filed in multiple an Appellees' Brief in Support of the Petition for Rehearing.

Proof of Service was likewise submitted on said date.

The Court, having examined said Petition for Rehearing, and the Supporting Brief therefor, is of the opinion that said Petition for Rehearing should be denied.

Petition for Rehearing denied.

Done this 31st day of December, 1966.

Mote, P. J., concurs.

Carson, Faulconer, Prime and Smith, JJ., concur.

Wickens, C. J., and Hunter, J., not participating.

NOTE.—Reported in 221 N. E. 2d 696.