**ANACOMP, INC., Defendant-Appellant,**

v.

**F. Thomas WRIGHT, Plaintiff-Appellee.**

**No. 1–1082A290.**

Court of Appeals of Indiana, First District.

May 23, 1983.

Rehearing Denied July 6, 1983.

Peter G. Tamulonis, Kightlinger, Young, Gray & DeTrude, Edgar H. Lamb, Yarling, Tunnell, Robinson & Lamb, Indianapolis, for defendant-appellant.

Andrew Jacobs, Sr., Christopher C. Zoeller, Indianapolis, Charles C. Engel, Brownsburg, Thomas L. Landwerlen, Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF CASE

Anacomp, Inc., appeals the trial court's judgment in an action by F. Thomas Wright for an accounting arising out of an employment and stock sale agreement. We affirm, but set aside the trial court's award of prejudgment interest upon agreement of the parties that such was error.

## FACTS

Early in 1977 Wright was employed by NCR and served as a marketing consultant to Anacomp. Wright and Anacomp began to negotiate concerning Wright's employment as an executive with that company, and on July 13, 1977, they executed the following letter of agreement:

"July 13, 1977

Mr. Tom Wright

6412 Fall Creek Road

Indianapolis, Indiana 46220

Dear Tom:

In view of the fact that Anacomp wishes to retain your services as marketing consultant for the months of July and August 1977; and wishes to employ you as an Anacomp executive on or about September 1, 1977; the following equity incentive arrangement is proposed as consideration for such. If you are in agreement with the terms contained herein, please acknowledge by signing the two copies as indicated and returning one to Anacomp.

In exchange for $25,625.00 payable by you to Anacomp, the Company agrees to issue 3,060 shares of Anacomp Common Stock to you.

Further, in exchange for execution of a non-interest bearing note in the amount of $100,000.00, you shall receive 11,940 additional shares of Anacomp Common Stock subject to the following provisions:

1. You agree to retire the $100,000.00 note in five equal installments of $20,000.00 each during the next five consecutive years beginning July 1, 1978.
2. In that the proceeds for retirement of this note are intended to be derived from bonus compensation income, the parties agree that the installments will not be due until the annual bonuses are paid pursuant to completion of the annual audit in each respective fiscal year, but no later than ten days after payment of bonuses.
3. Security for the note will be 11,940 shares of Anacomp Common Stock.
4. Upon each installment payment of $20,000.00, Anacomp will release to Thomas Wright 2,388 of shares it is holding as security to him.

In the event of termination of this agreement prior to end of the five consecutive years as previously established, Anacomp agrees to buy and you agree to sell the 3,060 shares of Anacomp Common Stock for you at the cost of $25,625.00. It is further agreed that recovery of the remaining note balance, if any at the time of termination, will be recovered through the return of any shares not yet released as security for the note. Thus, for example, if after three years there remains a $40,000.00 balance on the note and 40% of the shares are yet held as security, the two amounts will be taken as offset payment in full.

This agreement is intended to be binding upon the parties until the execution of a definitive employment agreement between said parties. At that time, the provisions of this agreement will be incorporated in the employment agreement unless the parties agree otherwise.

Sincerely,

/s/ Ronald D. Palamara

Ronald D. Palamara, Ph.D.

President and Chairman of the Board

KDP:ji

Accepted by:

/s/ Thomas Wright

Thomas Wright"

Record at 79. On July 18, 1977, Wright paid Anacomp $25,625 for 3,060 shares of stock, and Anacomp issued Wright restricted stock certificate number 22079. The parties drafted, but did not execute, the non-interest bearing note referred to in the letter.[1] In early August 1977 Anacomp also issued Wright a certificate for 11,940 shares of stock together with a $750 dividend check, both of which Wright returned to Anacomp, stating that he was entitled only to the 3,060 shares and the dividends thereon. Although the parties had anticipated employment negotiations would conclude around September 1977, they continued until late December 1978 at which point everyone seemed to realize that a definitive employment agreement would not be reached. Early in 1978 Wright informed Anacomp's president, Dr. Palamara, that he wanted to sell some of his stock. Palamara indicated to Wright that he could do as he wished, but that the Rule 144 restriction on the stock precluded a public sale through a regular broker. Palamara did not offer to buy back the stock, and Wright's efforts to sell the stock through a stock broker were unsuccessful.

At various times from the date of issue certain cash dividends, stock dividends, and stock splits were declared and distributed by Anacomp. In addition to those already mentioned, Wright received the following dividends as set out in the court's finding 17(c):

| "Exhibit | Dated | Cash | Certificate No. | No. of Shares |
|---|---|---|---|---|
| 8 | 9/1/77 | | 24740 | 306 |
| 9 | 11/17/77 | $153.00 | | |
| 10 | 11/22/77 | 168.30 | | |
| 11 | 2/10/78 | 168.30 | | |
| 12 | 4/11/78 | | 27730 | 336 |
| 13 | 3/28/78 | 6.15 | | |
| 14* | | | | |
| 15 | 5/10/78 | 185.10 | | |
| 16 | 8/10/78 | 185.10 | | |
| 17 | 9/20/78 | | 33684 | 1851 |
| 18 | 11/10/78 | 222.12 | | |
| 19 | 2/8/79 | 222.12 | | |
| 20 | 4/24/79 | | 41552 | 1110 |
| 21 | 4/24/79 | 8.99 | | |
| 22 | 5/10/79 | 266.52 | | |
| | | $1,585.70 | | 3603 |

1. This note reads as follows:

"Each year for five years from the date hereof, for value received, the undersigned, F. Thomas Wright, whose mailing address is 6412 Fallcreek Road, Indianapolis, Indiana 46220, promises to pay $20,000.00 to the order of ANACOMP, INC., an Indiana Corporation, at 6161 Hillside Avenue, Indianapolis, Indiana 46220 or such other place as the holder may designate in writing, for a total sum of $100,000.00, without interest until maturity and with interest after maturity at the rate of 12% per annum. Failure to pay any installment of this note within *30 days* after date when due shall, at the option of the holder, ipso facto and at once without notice or demand mature all remaining installments hereof and the remaining security shall become the property of the note holder. The holder of this note is secured exclusively by *11,940 shares* of common stock of Anacomp, Inc., which shall be held in safe keeping by the Corporation until each annual installment is fully paid at which time the Corporation shall surrender 2,388 shares of common stock upon receipt of a written statement by borrower that all shares acquired are being acquired in good faith for investment and not for distribution. The number of shares are based upon the present capitalization of Anacomp, Inc. and should any change in the outstanding capital take place, by reason of a share dividend, recapitalization, merger, consolidation, split up, combination or exchange of shares, or the like, without payment of any consideration, the number of shares held as collateral shall be proportionately increased or decreased. Cash dividends shall be the property of the borrower.

The makers and endorsers waive presentment for payment, protest, notice of protest and notice of nonpayment of this note." Record at 84.

\*Exhibit 14 was a statement accompanying a stock dividend and it reads:

> This certificate represents the Anacomp, Inc. 10% Stock Dividend payable to holders of record March 28, 1978.
>
> If a check is enclosed, it represents cash in lieu of a fractional share at the rate of $10.25 per share.
>
> The Indiana National Bank
> Corporate Trust Division"

---

Record at 52–53.

On May 24, 1979, Anacomp mailed a check for $25,625 to Wright for the repurchase of the 3,060 shares plus all the dividend shares issued. In the letter they purported to have cancelled all of the stock which had been issued theretofore as dividends to Wright. Wright offered to return stock certificate number 22079 for 3,060 shares in return for the $25,625, but contended that he was entitled to the dividends, whether stock or cash, issued thereon. Anacomp disagreed, and Wright brought this action for an accounting. The court agreed with Wright, finding that an addendum to the July 13, 1977, agreement letter stating that stock dividends would be treated as part of the originating shares in the event of a buy back was not part of the parties' agreement and that Wright was entitled to the dividends in question. The court also ordered Anacomp to pay prejudgment interest at 8% from May 24, 1979, upon the $25,625, which interest both parties agree was error.

### ISSUES

1. Was the trial court's judgment contrary to the evidence in that both Wright

2. Exhibit # 7:
  "ADDENDUM
  Letter to Tom Wright
                              July 20, 1977
  It is the understanding of the parties that cash dividends paid on shares in this agreement become the property of the buyer, Tom Wright. Stock dividends which may be declared subsequent to this agreement will neither represent dilution or anti-dilution of the

and the court were bound by the stipulation of Exhibit # 7?

2. Was the trial court's decision contrary to law because it did not effect a rescission of the contract and return the parties to the *status quo ante?*

3. Did the trial court's award of prejudgment interest result in a decision so inconsistent internally that it should be set aside?

4. Is Wright entitled to "other relief" on cross appeal?

### DISCUSSION AND DECISION

Anacomp argues that the trial court's concluding Wright was entitled to the stock dividend shares was contrary to the evidence, *viz.,* the buy back agreement, hence contrary to law. Anacomp contends that the trial court's decision is contrary to the facts because both the parties and the court are bound by Wright's stipulation to the addendum to the July 13, 1977, letter agreement.[2] Although both parties stipulated Exhibit # 7 into the record, Wright testified at trial that he had never seen the

shares indicated in this agreement. This is, shares paid as stock dividends will be treated as a part of the originating shares, and correspondingly will be released with the originating shares as installment payments on the note are made and will be repurchased if the buy back arrangement is exercised along with the originating shares that are sold." Record at 85.

document prior to late 1979 when Anacomp enclosed it in response to his letter requesting the theory upon which Anacomp claimed the stock dividends. Anacomp cites no cases or authority for its position that the stipulation as made by the parties in this case forecloses any issue as to the authenticity or reliability of the document itself, and we find none.

■ Stipulations have been defined as agreements between counsel respecting business before the court. 26 I.L.E. *Stipulations* § 1 at 383 (1960). Courts generally favor stipulations which admit certain designated facts for the purpose of simplifying and expediting litigation. *Marshall County Redi-Mix, Inc. v. Matthew,* (1983) Ind.App. 447 N.E.2d 1165; *Raper v. Union Federal Savings and Loan Association of Evansville,* (1975) 166 Ind.App. 482, 488, 336 N.E.2d 840, 844. Parties may not agree, however, upon the legal effect of such factual stipulations. *Id.* Even though proper stipulations may be conclusive and binding as to all matters contained and necessarily included therein, 26 I.L.E. *Stipulations* § 3 at 387 (1960), such stipulations will not be construed to admit facts which were obviously intended to be controverted. *Marshall County Redi-Mix; Raper; Faught v. State,* (1974) 162 Ind.App. 436, 441, 319 N.E.2d 843, 847; *Groves v. Burton,* (1954) 125 Ind.App. 302, 318, 123 N.E.2d 204, 208, *reh. denied* 123 N.E.2d 705, *trans. denied* (1955). In the case before the court the sole issue was what had the parties agreed to with respect to the stock dividends declared and issued on the 3,060 share held in Wright's name. It is clear that the purpose of Wright's stipulating to the admissibility of Exhibit # 7 was only to expedite the litigation and not to agree that it represented part of the agreement between the parties. Had Wright agreed to the latter, there would have been no reason for his bringing this action. Anacomp has not convinced us that the stipulation of Exhibit # 7 foreclosed Wright's challenging its authenticity or that the court erred in finding that it was not part of the original agreement. In this respect the trial court's judgment is contrary neither to the evidence nor to law.

■ Second, Anacomp alleges that Wright's failure to become an employee constituted a complete failure of consideration for the agreement, that rescission was the only proper remedy, and therefore, that the parties should be placed *in statu quo ante.* Under this theory they assert that Anacomp is entitled to a return of the original 3,060 shares of stock plus all dividends and that Wright is entitled to a return of his $25,625 plus 8% interest. Anacomp complains additionally that the court's awarding Wright both interest and dividends was so internally inconsistent and irreconcilable that Anacomp should be granted a new trial.

It is true that the court's finding a waiver of the buy back agreement was inconsistent with that part of the judgment giving relief under the agreement. Furthermore, both parties agree that Wright was not entitled to both prejudgment interest as well as dividends. Nevertheless, these defects in the court's judgment may be cured by modification. Indiana Rules of Procedure, Appellate Rule 15(N) permits a court on appeal to correct a trial court's judgment without ordering a new trial unless such relief is impracticable or unfair to any of the parties. *See also* 17 I.L.E. *Judgment* § 114 at 229 (1959). Because the parties agree that there was no waiver of the letter agreement and that Wright was not entitled to prejudgment interest if he also retained the dividends, we conclude that modification of the court's judgment to conform to the parties' conclusions is neither unfair nor prejudicial.

■ Contrary to Anacomp's position, we find the fact that a definitive employment agreement was never reached does not indicate that the parties mutually agreed to rescind the initial stock sale contract. Such an argument is inconsistent with Anacomp's own stance that waiver of the buy back provisions in that contract did not occur. The initial contract here established the good faith position of each party and constituted a condition precedent for

negotiation of the definitive agreement. The contract between the parties that Anacomp would sell Wright 3,060 shares for $25,625 and buy them back for the same amount was a separate and independent agreement which had been fully executed. What Wright sought in his action before the trial court was not rescission of that contract, but an accounting resulting from a complex stock sale and buy back agreement. An action for an accounting is equitable in nature with the purpose of adjusting the account of the litigants and of rendering complete justice in a single action. 1 I.L.E. *Accounts and Accounting* § 1 at 48 (1957). We are not convinced that the trial court abused its discretion in fashioning relief under the facts and circumstances before it which gave each of the parties the benefit of its bargain.

■ Third, Anacomp argues that the trial court's judgment is contrary to law because both the intent of the parties and the legal theory of rescission upon which Anacomp relies provide that the parties should be returned to the *status quo ante*. Anacomp reasons that Wright is bound to return all the shares he now owns for the original consideration because the stocks were offered to enable Wright to establish an equity ownership relationship with the corporation and because the original stocks plus the dividend shares issued thereon represented the same proportionate ownership position as he originally held. Anacomp asserts that if fewer than all the shares are returned then the equity interest represented by the stock returned would be less than the equity value represented by the original shares.

It is true that Anacomp's proposed stock offer of 15,000 shares might support an inference of proportionate ownership in the corporation. However, only part of the stock was actually sold to Wright. Moreover, because the stock issued to Wright was restricted, there is nothing to stop Anacomp from recovering that proportionate interest when it buys back those shares. An important consideration ignored by Anacomp in its discussion of returning the parties to the *status quo* is the fact that Wright's ownership position was based on the investment of funds which he borrowed. Thus, while Wright was paying interest on the $25,625, Anacomp had the use of the principal. Officers of Anacomp testified that the purpose of the letter agreement was to assure Wright of a no risk position. The letter agreement provided that Wright was entitled to the return of his $25,625 and Anacomp to its 3,060 shares, but was silent with respect to the subsequent dividends representing Wright's at risk position insofar as the ability of the dividends to cover his interest payments was concerned. While it may appear as a windfall for Wright to recover the dividends for which it is alleged he gave no consideration, it is arguably just as much of a windfall for Anacomp to be able to buy back the 3,060 shares at 8.37 when the stock at the time of trial was selling on the open market for 40.00. Nevertheless, fixed price stock buy back arrangements are generally upheld by courts so long as they are not tainted with fraud. 18 Am.Jur.2d *Corporations* § 314 (1965). Wright raises no contention of fraud and concedes that there was no waiver of the buy back arrangement as to the 3,060 shares. He argues that disposition of the stock dividends, in the absence of an agreement to the contrary, should be made according to the law.

■ The law provides that the right to receive dividends is an incident of stock ownership which applies equally to stock and cash dividends. 19 Am.Jur.2d *Corporations* § 890 at 370 (1965). The general rule is stated that "whoever owns the stock in a corporation at the time a dividend is declared owns the dividend also. . . ." *Bright v. Lord*, (1875) 51 Ind. 272, 276; 6 I.L.E. *Corporations* § 102 at 506 (1958); 19 Am. Jur.2d *Corporations* § 890 at 371 (1965). In the words of another authority, "[s]tock dividends, like cash dividends, belong, in the absence of an agreement to the contrary, to the holders of stock at the time when the dividend is payable, and without regard to the source from which, or the time during which, the funds to be divided among the

stockholders were acquired." (Footnote omitted.) 11 W. Fletcher, *Cyclopedia of Corporations* § 5359 at 739 (Perm.Ed.1971). It is obvious from the purported addendum to Anacomp's employment letter to Wright and the unexecuted promissory note that Anacomp knew how to draft an agreement contrary to the general rule and to provide for its desired result. However, as stated above, these documents did not comprise the original agreement. We note that Anacomp raises no question with respect to Wright's entitlement to the cash dividends in this appeal. Although Anacomp distinguishes at great length the completely different natures of cash and stock dividends as far as tax and trust cases are concerned, we are not convinced that there is any reason to distinguish between the two in this case. The trial court found correctly, according to the law, that Anacomp was not entitled to a return of the dividends, be they cash or stock.

Anacomp also posits the argument that even if Wright is entitled to the additional shares of stock represented by the stock dividends, he is not entitled to those shares which he accumulated as a result of stock splits. Anacomp asserts that there is a distinction between stock dividends and stock splits. We agree. Stock dividends suggest a capitalization of earnings or profits together with a distribution of the added shares which evince those assets transformed into capital. 19 Am. Jur.2d *Corporations* § 808 at 284 (1965). Stock splits, on the other hand, connote a mere increase in the number of shares evincing ownership without altering the amount of capital, surplus, or segregated earnings. *Id.* A stock split, therefore, is essentially a matter of form and not of substance in that it does not change the stockholder's proportionate ownership or participating interest in the corporation. *Id.; Rogers Walla Walla, Inc. v. Ballard,* (1976) 16 Wash.App. 81, 553 P.2d 1372, 1376. Courts have recognized, however, that what is demoninated by a corporation as a stock dividend may in truth be a stock split and vice versa. *Rogers Walla Walla.* Thus, while the corporation's denomination of an issue of stock to shareholders as a stock dividend or a stock split may be useful and definitive for certain purposes, courts, where necessary, will look behind that denomination to the essence of the corporate transaction to determine whether the dividend was in actuality issued as a result of a transfer of accumulated earnings into capital or as a mere increase in the number of shares of stock. *See, e.g., Rogers Walla Walla; Geier v. Mercantile-Safe Deposit & Trust Co.,* (1974) 273 Md. 102, 328 A.2d 311.

Despite Anacomp's insistence that stock certificate numbers 33684 and 41552 were issued as a result of stock splits, the court found, and the corporate minutes in the record support the finding, that

"upon the declaration of each of the stock dividends, as stated above, Anacomp transferred additional 'earned surplus', or 'capital surplus' into its common stock account; and that although each share holder, unless he sold some of his stock, would maintain the same proportion of stock equity in the corporate assets, the value thereof would not remain the same because the dividend stock thus issued represented part of the profits earned by Anacomp from the use of its stock investor's cash payments including the $25,-625.00 paid by Wright."

Record at 53. Thus, we find no basis in fact or at law to support Anacomp's position that somehow the stock split shares should be treated differently from the other dividends declared and issued to Wright.

Finally, Wright maintains on cross appeal that he is entitled to "other relief," *viz.,* dividends on stock certificate number 22079 until Anacomp repurchases that stock. We need not decide this issue, because Wright fails to cite authority or develop an argument to support his position. The issue has been waived. *See* Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

Judgment awarding Anacomp stock certificate number 22079 and Wright $25,625 plus dividends affirmed. Judgment awarding 8% pre-judgment interest vacated upon

agreement by the parties. Costs to be borne by Anacomp.

ROBERTSON, P.J., and NEAL, J., concur.