**In re the Marriage of Candace K. EYLER, Appellant (Petitioner Below),**

v.

**Gary EYLER, Appellee (Respondent Below).**

**No. 1–385A74.**

Court of Appeals of Indiana, First District.

Nov. 26, 1985.
Rehearing Denied Jan. 9, 1986.

Peter G. Tamulonis, Kightlinger, Young, Gray & DeTrude, Indianapolis, for appellant (petitioner below).

Gregory F. Hahn, William T. Rosenbaum, Dillon & Cohen, Indianapolis, for appellee (respondent below).

ROBERTSON, Judge.

Petitioner-appellant Candace Eyler (Candace) appeals from the decree of the Boone Circuit Court dissolving her marriage with respondent-appellee Gary Eyler (Gary), dividing their property and determining custody of their two children.

We affirm.

Candace and Gary were married on December 4, 1971. Two children were born of the marriage. On June 15, 1983, Candace petitioned for dissolution of the marriage. The trial court entered its decree of dissolution, which Candace now challenges on five grounds:

1) Whether the award of custody to Gary was erroneous;

2) Whether the trial court improperly relied upon a custody evaluation conducted by Tri-County Mental Health Center;

3) Whether the division of personal property constituted reversible error;

4) Whether the trial court erroneously applied a minority discount in its valuation of stock in Gary's business;

5) Whether the trial judge should have disqualified himself.

ISSUE ONE:

The trial court granted to Gary and Candace joint custody of the children, with Gary having primary custody. Candace asserts that the custody award was erroneous, because it was contingent upon a change in circumstances. To support her assertion, Candace emphasizes that the original language of Finding of Fact No. 25 was conditional:

> 25. That pursuant to testimony given before the court, Mr. Eyler is going to marry Peggy Patterson. Mary Smith, an employee of the Husband, who works on a daily basis in the Husband's home has a close and daily relationship with the children. The Court's Order awarding the Husband physical custody of the children is contingent upon Miss Patterson becoming more knowledgeable about child rearing through attending parenting classes, literature and continued involvement in the children's activities. The Order is also contingent upon the fact that Mary Smith, or someone who is of the same demeanor and temperament as Mrs. Smith be employed by Mr. Eyler so that individual can provide the children the needed necessary [sic] discipline and structure. In addition, the Court also instructs Mr. Eyler to be more accessible to the children by working closer to home.

Both Gary and Candace filed motions to correct error which challenged the language of Finding of Fact Number 25. The trial court ruled on the motions to correct error:

> 20. Both the Petitioner and the Respondent have contended that this Finding of Fact is erroneous or ambiguous and the Court finds that portions of this Finding will lead to further controversy if not amended.
> 21. The Court did not intend for the award of joint custody with primary cus-

tody to Husband to be contingent and the usage of that word in Finding of Fact 25 was unintentional and mistaken.

> 22. The Court hereby corrects, clarifies and amends Finding of Fact 25 as follows:
> "25. That pursuant to testimony given before the court, Mr. Eyler is going to marry Peggy Patterson. Mary Smith, an employee of the Husband, who works on a daily basis in the Husband's home, has a close and daily relationship with the children."

The trial court explained that the award of primary custody to Gary was not contingent upon a change in present circumstances. In its discretion, the trial court may grant custody to either parent, or deny it to both, according to their fitness and ability at the time of the decision. *Stone v. Stone*, (1902) 158 Ind. 628, 64 N.E. 86. Amended Finding of Fact Number 25 manifests no error in the award of custody.

Candace argues that even if the custody award was not contingent upon a change in circumstances, it constituted an abuse of discretion. To constitute an abuse of discretion, the court's decision must be one which is clearly against logic and effect of the facts and circumstances before the court. The reviewing court must determine whether the evidence adduced at trial can serve as a rational basis for the court's decision. However, the court of appeals will neither reweigh the evidence nor assess the credibility of witnesses. *In re Marriage of Julien*, (1979) Ind.App., 397 N.E.2d 651, 653.

In making the determination of custody, the trial court in the instant case had a substantial amount of contradictory evidence before it. Although the evidence might have supported a conclusion different from the one reached by the court, we will not substitute our judgment for that of the trial court. *See id.* Candace has failed to show a manifest abuse of discretion warranting reversal of the trial court's decision.

ISSUE TWO:

■ Candace contends that undue credence was given to the custody evaluation report prepared by Tri-County Mental Health Center, because the trial judge served on the Board of Directors of Tri-County. On August 1, 1984, Tri-County was appointed to conduct an evaluation pursuant to IND.CODE § 31-1-11.5-22(a) (1982). Candace did not object to the appointment of Tri-County at that time or later when the report was introduced into evidence. Candace failed to preserve the alleged error. *See Winkler v. Winkler*, (1969) 252 Ind. 136, 246 N.E.2d 375.

■ In the alternative, Candace maintains that the trial court should have granted her motion to strike the custody evaluation report. The motion to strike alleged that Tri-County had exceeded the bounds of the court order by interviewing Gary's housekeeper and that Tri-County had prejudiced Candace by including the testimony of that hostile witness in its report. The trial court properly denied the motion to strike.

IND.CODE § 31-1-11.5-22 (1982) permits the court to order an investigation and report concerning custodial arrangements for the children of a dissolved marriage. The statute authorizes the investigator to consult any person who may have information about the children and their potential custodial arrangements. Tri-County did not exceed its authority by interviewing Gary's housekeeper. The housekeeper took care of the children during the term of her employment, and she had been retained by Gary in the event he was granted primary custody. Thus, the housekeeper had information concerning the children and their potential custodial arrangements.

Including the testimony of the housekeeper in the evaluation report was not erroneous. Tri-County's report was a compilation of information gathered during its investigation, and the housekeeper was a person properly consulted by Tri-County. Although the housekeeper's testimony reflected unfavorably on Candace, the inclusion of such testimony did not constitute a basis for striking the custody evaluation report.

ISSUE THREE:

■ In its distribution of personal property, the trial court referred to an appraisal of the parties' assets introduced into evidence by Gary. The trial court awarded to Gary the items marked by yellow pen and to Candace the remaining items. When ruling on the parties' motions to correct error, the trial court stated that it had reversed the intended distribution of assets. The amended distribution gave to Candace the items marked by yellow pen and to Gary the remaining items.

On appeal, Candace maintains that the exchange of personal property awarded to each party constituted an abuse of discretion. Yet a close examination of the trial court's original distribution reveals such incongruities as an award of Candace's golf clubs to Gary and Gary's golf clubs to Candace. By amending the distribution of assets, the trial court effected a property division consistent with the logic and effect of the evidence before the court. We find no abuse of discretion. *See In re Marriage of Hirsch*, (1979) 179 Ind.App. 166, 385 N.E.2d 193.

Additionally, Candace notes that the trial court changed the specific items of personal property being awarded to each party without adjusting the dollar values originally assigned to each party's respective share of personal property. According to Candace, reversible error is manifest.

■ Contrary to Candace's position, the clerical error in the distribution of personal property was not reversible error. A court on appeal may correct a trial court's judgment without awarding a new trial, unless such relief is impracticable or unfair to any of the parties. Ind. Rules of Procedure, App.Rule 15(N); *Anacomp, Inc. v. Wright*, (1983) Ind.App., 449 N.E.2d 610. Moreover, the trial court could have corrected the arithmetical error by nunc pro tunc entry at any time, even after appeal. Ind. Rules of Procedure, T.R. 60(A); *Drost v. Professional Building Service Corp.*,

(1978) 176 Ind.App. 172, 375 N.E.2d 241. We therefore order modification of the decree of dissolution to accurately reflect the dollar values assigned to each party's respective share of personal property.

ISSUE FOUR:

The major marital asset in the instant case was 90.2% of the outstanding stock in Gary's business, Superior Training Services, Inc. The trial court determined that Gary would retain the stock and that Candace would receive a money judgment equal to the value of one-half the jointly owned stock. Candace objects because the trial court applied a minority discount when determining the value of one-half of the stock.

■ To determine the fair market value of stock, a court may consider such factors as book value, liquidating value, stock market value, evidence of sales in the market, the type of market available and all other elements which tend to affect fair market value. *General Grain, Inc. v. Goodrich*, (1966) 140 Ind.App. 100, 221 N.E.2d 696. Additionally, Indiana law recognizes the applicability of a minority discount in the valuation of corporate stock. *Perlman v. Permonite Manufacturing Co.*, (N.D.Ind. 1983) 568 F.Supp. 222. Candace was to receive a money judgment corresponding to the value of 45.1% of the outstanding stock in Superior Training Services, which percentage represented a minority interest. Application of a minority discount was supported by law.

■ The evidence also supported application of a discount factor of 25%. Experts testified that a minority block of stock was worth less than a controlling interest. One witness indicated that a minority discount of up to 30% would be justified, while another expert limited the discount to 25%. The trial court accepted the figure proposed by Candace's expert witness.

■ In her final challenge to the stock valuation, Candace complains that the trial court did not consider the remaining 9.8% of the stock in Superior Training Services

acquired by Gary prior to the distribution of property but after the time of separation. IND.CODE § 31-1-11.5-11 (1982) provides:

> (a) For purposes of this section, "final separation" means the date of filing of the petition for dissolution of marriage under section 3 of this chapter. (b) In an action pursuant to section 3(a) of this chapter, the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and *prior to final separation* of the parties, or acquired by their joint efforts, in a just and reasonable manner....

(Emphasis added).

Gary and Candace stipulated that at the time of separation, they owned 90.2% of the outstanding stock in Superior Training Services. The trial court correctly determined that the stock to be divided between Candace and Gary was the 90.2% acquired prior to final separation.

ISSUE FIVE:

■ In the fifth issue raised on appeal, Candace avers that the trial judge should have disqualified himself because Gary's attorney was the co-chairman of the "Bi-Partisan Friends of Judge Drury" political committee. Candace discovered opposing counsel's political support for the trial judge on July 2, 1984, and trial commenced on July 10, 1984. However, Candace did not object to the trial judge continuing to serve, and she did not move for a change of judge. The asserted grounds for disqualification were presented for the first time in Candace's motion to correct error.

In *Carson v. Associated Truck Lines*, (1968) 143 Ind.App. 431, 241 N.E.2d 78, the court of appeals addressed the failure to move for a change of judge or for disqualification of judge.

> [T]he appellant, in rather strong terms, alleges that the trial judge was biased and prejudiced and should have disqualified himself in this case. Although appellant concedes that our laws provide for a change of venue, change of judge,

or a request that a judge disqualify himself, no such motions were apparently made in this action.... The appellee notes that a search of the record shows no question was ever raised by appellant concerning any alleged bias or prejudice of the trial court. If the appellant fails to point out alleged misconduct of the trial court *during the course of trial* and give such court an opportunity to correct itself at that time, then the appellant waives this issue on appeal.

*Id.* at 434–35, 241 N.E.2d at 79–80 (emphasis in original).

Motions for change of judge and venue and for disqualification of judge are designed to avoid the problem of judicial prejudice. *Matter of Estate of Baird,* (1980) Ind.App., 408 N.E.2d 1323. Having failed to avail herself of those motions or to offer the objection necessary to preserve error, Candace may not pursue this issue on appeal. *See id.* at 1331.

Remanded with instructions to modify decree to show correct dollar value assigned to each party's respective share of personal property. Judgment in all other respects affirmed.

NEAL, J., concurs.

RATLIFF, P.J., dissents with separate opinion.

RATLIFF, Presiding Judge, dissenting.

In my opinion, it was error for the trial court to apply a minority discount in valuing the shares of stock in the husband's business corporation. For this reason I must dissent although I concur in the majority's resolution of the other issues.

The majority's statement that "[t]he trial court determined that Gary would retain the stock and Candace would receive a money judgment equal to the value of one-half the jointly owned stock," Slip Opinion at 6, is inaccurate. The final decree awarded all the stock to Gary. The decree also awarded a money judgment of $350,000 to Candace, but nowhere does the decree say this award is for one-half of the stock. In fact, one-half of the value of the stock, which the court valued at $785,395 after applying both a minority discount and a "one man business" discount, is $392,-697.50, not $350,000. However, it is fair to assume the court considered the value of the stock in determining the amount of Candace's money judgment.

The trial court, in its Finding No. 70, determined the value of the corporation to be $1,308,992 as of the date of the filing of the petition for dissolution. It then applied a 25% discount for "the minority interest aspect of Wife's share, and 20% for the 'one man business' aspect ..." thereby finding the discounted value of the business to be $785,395. Finding No. 71 of the decree, p. 15 of Appendix to Appellant's brief. In applying the minority discount, I believe the court erred, and that such error constituted an abuse of discretion thereby prejudicing Candace's interests.

This is not a case involving the sale or valuation of a minority interest in a closely held corporation where application of a minority discount might be appropriate under some circumstances. Here, the issue before the court was the valuation of all the stock owned by the marital unit which was 90.2% of the total, hardly a minority interest. All of this stock was awarded to Gary. Therefore, no minority interest question is involved. The issue was the value of all the stock which was a near total ownership of the corporation. Reducing the value of the stock by arbitrarily applying a minority discount was unreasonable and adversely affected the valuation of the total marital estate. For the court to use such an unreasonable valuation in determining Candace's share of the property distribution was an abuse of discretion.

Therefore, I would reverse and remand for correction of the valuations and property distribution.