John BATTERSHELL and Helen Battershell, Appellant–Plaintiffs,

v.

PRESTWICK SALES, INC., GTT Development Co., Inc., GTT Associates, An Indiana Limited Partnership, Terry Hamilton, Gerald F. Gowan, and Thomas W. Riley, Appellee–Defendants.

No. 06A01–9107–CV–197.

Court of Appeals of Indiana, First District.

Jan. 13, 1992.

David T. Kasper, Charles B. Baldwin, Lock, Reynolds, Boyd & Weisell, Indianapolis, for appellant-plaintiffs.

Philip L. Gundlach, Hinkle, Keck & Gundlach, Danville, Peter L. Obremskey, Carol Sparks Drake, Parr, Richey, Obremskey & Morton, Lebanon, for appellee-defendants.

BAKER, Judge.

Plaintiff-appellants John and Helen Battershell (the Battershells) appeal the Boone Circuit Court's order awarding the price to be paid for their 23% ownership interest in Prestwick Sales, Inc. The trial court ordered the defendant-appellees Prestwick Sales, Inc., GTT Development Co., Inc., GTT Associates, Terry Hamilton, Gerald F. Gowan, and Thomas W. Riley (jointly referred to as "Prestwick Sales"), to pay the Battershells $247,000.00 for stock the trial court found had a $602,705.80 fair market value. They raise three issues for our review, which we restate as:

I. Whether under Indiana law stock must be valued solely on fair market value.

II. Whether the parties were prohibited from stipulating to a valuation other than fair market value.

III. Whether the parties' Agreed Entry directed the trial court to award the Battershells a price for their stock other than fair market value.

We reverse.

## FACTS

This action arose from the development of Prestwick, a residential development and golf course located in Hendricks County, Indiana. The project originated in 1973, but eventually failed financially. Under new owners, the golf course improved and its reputation grew. In 1985, following transactions unrelated to this action, Terry Hamilton, Gerald Gowan, and Thomas Riley formed GTT Development Company, Inc. (GTT). They formed the company to seek financing to purchase remaining real estate development aspects of Prestwick. After several initial failures in obtaining financing, GTT convinced Merchants National Bank & Trust Company of Indianapolis to finance the venture. As a condition, however, Merchants National Bank insisted there be a fourth shareholder with a "strong" financial statement. Because of his previous interest in Prestwick and his strong financial condition, John Battershell joined GTT.

In the spring of 1988, GTT agreed to pay $800,000 for an interest in Prestwick, which was far less than the fair market value. Previous owners had spent $22 million in the development. To complete the transaction, Gowan, Hamilton, Riley and John Battershell formed GTT Associates, an Indiana limited partnership, and they brought in six other limited partners, including Helen Battershell. A separate corporation, Prestwick Sales, Inc., was then formed to purchase the Prestwick holdings. Each shareholder of Prestwick Sales, Inc. paid $1.00 per share for his or her stock. No other capital contributions were made, although all of the shareholders of Prestwick Sales personally guaranteed payment of the $800,000 loan.

The Prestwick development proceeded at a reasonable rate; the relationship between the Battershells and the other principals disintegrated, however. In December 1986, Prestwick Sales attempted to restructure its financing in order to retire the original $800,000.00 loan from Merchants National Bank. To succeed, the shareholders of Prestwick Sales needed to guarantee personally the various loan transactions, but the Battershells refused. In the absence of any further guarantees by the Battershells, Prestwick Sales was forced to devise alternative methods of financing. The Battershells became unhappy with the actions of Prestwick Sales and filed a complaint on August 4, 1987, against Prestwick Sales, GTT Development, GTT Associates, Terry Hamilton, Gerald Gowan, and Thomas Riley. The complaint alleged, among other things, breach of partnership agreement, common law fraud, breach of fiduciary duty, and violation of corporate by-laws.

On August 23, 1987, the Battershells filed an amended complaint alleging federal securities violations and requested appointment of a receiver. Following a hearing on the petition for receivership, the parties signed an Agreed Entry. Pursuant to the stipulations set forth in the Agreed Entry, the trial court conducted an evidentiary trial and thereafter determined the price to be assigned for the sale of the Battershells' 23% interest in the Prestwick companies.

Although the trial court found the fair market value of the Battershells' stock was $602,705.80, the court awarded the Battershells $247,000.00. The Battershells now appeal the trial court's decision.

## DISCUSSION AND DECISION

To settle their legal dispute, the parties entered into a court-sanctioned Agreed Entry. The Battershells now challenge both the trial court's interpretation of that agreement and the permissibility of not awarding them the fair market value of their stock. The disputed provision states:

(2) The parties shall each submit to a hearing and an adjudication by the court on the issue of the price to be assigned for the sale of the plaintiffs' interests to the defendants. Said determination shall be made by the court following the presentation of evidence and argument by both sides on *any and all issues which relate to the determination of the price to be paid by the defendants* for the plaintiffs' interests. Such evidence may include expert testimony on the valuation of the assets of the defendant corporations and limited partnership. The parties agree that for purposes of valuation of the assets of the defendant corporations and limited partnerships, the date of valuation shall be April 24, 1988.

*Record* at 27 (emphasis added).

■ The trial court recognized that fair market value is normally the appropriate means of valuing stock. The court found, however, "the Agreed Entry in this case directs this Court to determine 'the price to be assigned for the sale of plaintiffs' interests to the defendants' based on 'any and all issues which relate to the determination of the price to be paid.'" *Record* at 118. Under its interpretation of the Agreed Entry, the court concluded that consideration of the following factors was appropriate:

A. The fair market value of Prestwick Sales, Inc. as of April 24, 1988;

B. The price the Battershells paid for their interests/stock in Prestwick Sales, Inc.;

C. The risk taken by the Battershells in personally guaranteeing the debt incurred by Prestwick Sales, Inc.;

D. The length of time that the risk was incurred;

E. The Battershells' "benefit of the bargain;"

F. The reasonable likelihood of future use of the property;

G. The affect [sic] of litigation, as of April 24, 1988, on future development should the golf course be found to not be "open space;" and,

H. The Battershells' refusal to personally guarantee further loans after December, 1986.

*Record* at 118. The Battershells appeal the trial court's decision, and present three arguments in support of their contention that the court's award was erroneous.[1]

### A

First, the Battershells argue that under Indiana law stock must be valued solely on fair market value, thereby prohibiting the trial court from basing its decision on unrelated factors. This court reviews questions of law under a *de novo* standard, substituting our judgment for the trial court's if necessary. *Ohio Casualty Insurance Co. v. Ramsey* (1982), Ind.App., 439 N.E.2d 1162, 1165, *trans. denied.*

In support of their argument, the Battershells direct us to cases in which fair market value was found to be the required method of valuation. We find the cases are not particularly instructive here, however, because the parties in the cited cases did not stipulate to a method of valuation before submitting their dispute to the trial court.

1. Prestwick Sales argues the court's determination of the price to be paid the Battershells is *res judicata* because the Battershells expressly stated in the Agreed Entry that "[t]he parties hereby stipulate and agree to abide by the decision of the court on the issues submitted herein, which decision shall be in the form of an 'Order' of the court...." *Record* at 28. We disagree. The agreement stipulates that the trial court's decision is binding, but it does not stipulate that the Battershells waived their right to appeal that decision. *See State v. Heslar* (1972), 257 Ind. 625, 277 N.E.2d 796.

In *General Grain, Inc. v. Goodrich* (1966), 140 Ind.App. 100, 221 N.E.2d 696 (en banc), for example, a case relied on heavily by the Battershells, the plaintiffs sued under the now repealed Indiana General Corporation Act,[2] which provided for shareholders to dissent to a merger and obtain payment for their stock. IND. CODE 23–1–1–1 *et seq., repealed by* Pub.L. No. 149–1986, sec. 65. The parties petitioned the court to value the dissenting shareholders' stock without first stipulating how the trial court was to make its determination. In reversing the trial court, the appellate court held that "[t]he verdict should have been based solely and exclusively upon the fair market value of the appellees' securities.…" *General Grain, supra,* at 113, 221 N.E.2d at 703. When valuing the stock of dissenting shareholders, the General Corporation Act provided that the courts were to apply the same practice, procedure, and judgment used under the eminent domain laws, and the eminent domain laws required the award of fair market value. The appellate court noted, however, that the parties were free to reach an agreement outside the provisions of the Act. *Id.* at 108, 221 N.E.2d at 700. Only in the absence of such an agreement was it held that the General Corporation Act dictated stock had to be valued at fair market value.

■ Furthermore, in a case involving a dispute over the method of valuation in a repurchase agreement in a closely held corporation, we held that "it is for the parties, not the court, to establish a valuation method in a purchase agreement." *Krukemeier v. Krukemeier Machine & Tool Co., Inc.* (1990), Ind.App., 551 N.E.2d 885, 890. Although book value is often the valuation used in close corporation repurchase agreements, we held that "[i]f the parties to a purchase agreement desire to use a valuation method other than book value, they are of course free to do so." *Id.* at 890 n. 7. *See also Shortridge v. Platis* (1984), Ind.App., 458 N.E.2d 301 (court upheld buy/sell agreement that provided for pur-

chase of stock at one third its market value). Similarly, the parties here were also free to stipulate to a valuation method other than fair market value when negotiating their Agreed Entry.

**B**

Second, the Battershells argue the parties could not stipulate to a measure of damages other than fair market value. They argue that both the appropriate method of valuing stock in a closely held corporation and the factors relevant under that method are questions of law. Because parties may not stipulate to questions of law, *Brandt Construction Co., Inc. v. Lumen Construction Co.* (1987), Ind.App., 515 N.E.2d 868, 872, *trans. denied,* so the argument goes, the stipulations here were not binding to the extent they deviated from awarding the mandated fair market value.

The Battershells' argument fails because, as discussed above, the trial court was not required as a matter of law to value the stock based solely on fair market value. Therefore, the parties did not stipulate to a question of law in their Agreed Entry.

**C**

The Battershells also argue the trial court's interpretation of the Agreed Entry was erroneous. They contend that under the stipulation that the trial court consider "any and all issues which relate to the determination of the price to be paid by the defendants for the plaintiffs' interests[,]" the trial court was required to award the fair market value. We agree.

■ The Agreed Entry was a written agreement between the parties, and it must be construed in the same manner as any other agreement or contract. *See Marshall County Redi–Mix, Inc. v. Matthew* (1984), Ind., 458 N.E.2d 219, 222. The interpretation or legal effect of a contract is a question of law to be determined by the

---

2. The current corporate law in Indiana is the Indiana Business Corporation Law (BCL). IND. CODE 23–1–17–1 to 23–1–54–3. It was adopted by the Indiana General Assembly in its 1986 session, and became effective August 1, 1987. Pub.L. No. 149–1986.

court. *Romain v. A. Howard Wholesale Co.* (1987), Ind.App., 506 N.E.2d 1124, 1126, *trans. denied.* Language in a contract is given its plain and ordinary meaning, *id.*, and we will find a contract is ambiguous only when reasonable persons would differ as to the meaning of its terms. *Property Owners Insurance Co. v. Hack* (1990), Ind. App., 559 N.E.2d 396, 399, *trans. denied.* When the ambiguity arises from the language of the contract, and not from extrinsic evidence, resolution of the ambiguity is a question of law for the trial court. *Id.* at 403. On review, the trial court's decision has a presumption of correctness. *Romain, supra.* We will affirm that decision unless the evidence most favorable to the trial court leads uncontrovertibly to the conclusion the decision was contrary to law. *Id.*

■ We went to great lengths in Issue I above to refute the Battershells' contention that Indiana law requires courts to value stock solely on fair market value, thereby prohibiting parties from agreeing to deviate from fair market value. Again, parties are free to stipulate to a valuation other than fair market value. *See Krukemeier, supra.* When the parties do not make such a stipulation, however, we find that fair market value is the appropriate method of valuing stock.[3]

■ In this case, the Agreed Entry directed the trial court to decide "the price to be assigned for the sale of the [Battershells'] interests to the defendants." *Record* at 27. Although the trial court

recognized that "fair market value is the method normally employed to determine values of business stock interests," *Record* at 118, the trial court did not apply the fair market value method here. Under the agreement's directive that the court consider "any and all issues which relate to the determination of the price to be paid," *Record* at 27, the trial court considered factors unrelated to fair market value. For example, the court considered the price the Battershells paid for their Prestwick stock; the risk they took by personally guaranteeing the debt incurred by Prestwick Sales, Inc.; the length of time they incurred the risk; their benefit of the bargain; and their refusal to guarantee personally further loans after December 1986. *Record* at 118. Instead of proceeding as though the parties intended the court to award the stock's fair market value, therefore, the court awarded a price based on evidence irrelevant to fair market value.[4]

Price is defined as:

Something which one ordinarily accepts voluntarily in exchange for something else. The consideration given for the purchase of a thing. Amount which a prospective seller indicates as the sum for which he is willing to sell; market value. The term may be synonymous with cost, and with value, as well as with consideration, though price is not always identical either with consideration.

Black's Law Dictionary 1070 (5th ed. 1979). Although "price" and fair market value are

---

**3.** We note the parties did not bring this case under the Indiana Business Corporation Law (BCL). IND.CODE 23–1–17–1 to 23–1–54–3. Once the procedural provisions of the BCL are satisfied, the law requires corporations to pay dissenting shareholders the fair value of their shares. IND.CODE 23–1–44–15(a). "Fair value" is defined as "the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable." IND.CODE 23–1–44–3. The growing use of "fair value" instead of "fair market value" has been explained by the "recognition that the events that trigger the valuation process may either disrupt or preclude the market for the shares, if in fact such a market ever existed—as in the case of a closely held corpora-

tion." Murdock, *The Evolution of Effective Remedies for Minority Shareholders and Its Impact Upon Valuation of Minority Shares,* 65 Notre Dame L.Rev. 425, 484 (1990).

**4.** The trial court also considered factors that were relevant to fair market value, including the reasonable likelihood of future use of the property, and the effect of litigation on future development should the golf course be found not to be "open space." An expert who determined the fair market value of the Prestwick Sales real estate, Richard Nichols, testified that he considered these two elements when making his appraisal; a valuation the trial court found was more reliable and credible than the valuation offered by the defendants' expert, Nick Tillema.

not necessarily synonymous, neither are they necessarily different. We simply cannot conclude from the Agreed Entry whether the parties intended the trial court to deviate from awarding the fair market value of the stock. Because the agreement does not clearly impart to us the intent to deviate from fair market value, we find the trial court erred when it considered factors irrelevant to fair market value. Instead of requiring parties to explicitly state that stock is to be valued solely on its fair market value, we find the better rule is to require parties who wish to deviate from fair market value to express clearly that intent.

We accordingly reverse the trial court's judgment ordering the payment of $247,-000.00, and remand with instructions to enter judgment ordering the defendants to pay the Battershells the fair market value of their Prestwick stock, which the trial court found to be $602,705.80.

Judgment reversed.

RATLIFF, C.J., and BARTEAU, J. concur.